CASE 80—MANDAMUS—DECEMBER 15.

# State Board of Pharmacy of Kentucky v. White.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. UNDER THE "PHARMACY ACT" of this State all "graduates in pharmacy" are entitled to be entered as registered pharmacists without submitting to an examination, and without having served an apprenticeship, and any rule of the State Board of Pharmacy to the contrary is void.

2. A GRADUATE OF A "SCHOOL OF PHARMACY," which is one of the departments of an advanced institution of learning, whether in this State or not, such as the University of Michigan, is a graduate of a "College of Pharmacy" within the meaning of the "Pharmacy Act."

3. GRADUATION AS A PHARMACEUTICAL CHEMIST confers the honor of a "graduate in pharmacy."

4. MANDAMUS WILL LIE to compel the State Board of Pharmacy to enter a "graduate in pharmacy" as a registered pharmacist, the board having no discretion in the matter.

GOODLOE & ROBERTS AND BAKER & ATCHISON FOR APPELLANT.

Briefs not in record.

WM. CHENAULT AND R. T. COLSTON FOR APPELLEE.

1. The proper meaning of a college of pharmacy is an institution in which students are instructed in the higher branches of pharmacy. (Rapalje and Laurence's Law Dictionary, volume 1. page 228.)

2. A school of pharmacy is the same as a college of pharmacy. (Rapalje and Laurence's Law Dictionary, volume 2, page 1152; report for 1881 of U. S. Commissioner of Education, pages 640-1.)

3. Graduates with the degree of pharmaceutical chemists are "graduates in pharmacy."

4. It was the legal duty of appellants to admit the appellees to registration, and as ministerial officers charged with that duty they can be compelled by mandamus to perform it. (Civil Code, section 477; General Statutes, page 995; Trustees of Catlettsburg v. Kinner, 13 Bush, 335; City of Henderson v. Sandefur, &c., 11 Bush. 541.)

5. It is not necessary to constitute an institution a college of pharmacy, that it should be controlled in its government by pharmacists or require three years' drug-store experience as a condition of graduation.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Bessie W. White, of Kentucky, is a graduate of the School of Pharmacy of the Michigan University, her diploma as "a pharmaceutical chemist" being dated June 28, 1883.

The university is regularly incorporated. She applied to the Kentucky State Board of Pharmacy, on November 8, 1883, for registration as a registered assistant pharmacist; paid the required fee; exhibited her diploma, and even offered to be examined. They rejected her application upon the ground that she was not a graduate of pharmacy within the meaning of the law, and refused to examine her. Thereupon she, by this suit, applied for a mandamus to compel the board to admit her to registration.

The Pharmacy Act (General Statutes, p. 993) provides:

"Sec. 1. It shall be unlawful for any person, unless a registered pharmacist, or registered assistant pharmacist in the employ of a registered pharmacist, or unless acting as an aid under the immediate supervision of a registered pharmacist or a registered assistant pharmacist within the meaning of this act, to retail, compound or dispense medicines or poisons, except as hereinafter provided.

"Sec. 2. Any person, in order to be a registered

pharmacist, or a registered assistant pharmacist in the meaning of this act, shall be either *a graduate in pharmacy*, a practicing pharmacist, or a practicing assistant in pharmacy.

"*Graduates in pharmacy shall be such as have obtained a diploma from a regular incorporated college of pharmacy*. Practicing pharmacists shall be such persons as, at or prior to the passage of this act, have kept or continue to keep open shops for compounding and dispensing the prescriptions of medical practitioners, and for the retailing of drugs and medicines, and who shall have declared their intention, in writing, of keeping open shops for a compounding of prescriptions of medical practitioners and the retailing of drugs and medicines, and such other persons who, after the passage of this act, shall have declared their intention, in writing, to open a shop for compounding and dispensing the prescriptions of medical practitioners and for retailing drugs and medicines, shall have at least three years of practical experience in the business, and shall have passed a satisfactory examination before the State Board of Pharmacy.

"Practicing assistants in pharmacy shall be such persons as shall have served five years immediately preceding the passage of this act in a shop or shops where the prescriptions of medical practitioners are compounded, and such other persons as have served three years' apprenticeship in a shop or shops where the prescriptions of medical practitioners are compounded, have furnished a certificate of sober habits and good moral character from the county judge of the county in which he resides, and shall have passed

a satisfactory examination before the State Board of Pharmacy.

\*     \*     \*     \*     \*     \*     \*     \*

"Sec. 4.    \*   \*   \*   \*   Said board shall   \*   \*   \*   \* have power to make by-laws and all necessary regulations for the proper fulfillment of their duties under this act.   \*   \*   \*   \*   The duties of said board shall be to examine all applicants' for registration, to direct the registration by the registers of all persons properly *qualified or entitled* thereto, and to report to each regular session of the General Assembly on the condition of pharmacy, together with the names of all registered pharmacists and assistants pharmacists."   Wo have cited so much of the act as is material to the consideration of the questions involved in this case.

The second section enumerates the qualifications for registration in pharmacy.   It recognizes two classes of persons, under the title of practicing pharmacists, who are entitled to be entered as registered pharmacists.

1. All persons actually in the business of pharmacy at the time of the passage of the act, and who may declare their intention, in writing, to continue in it.

2. All persons not then in the business, but who may declare their intention, in writing, of going into it, provided they "shall have at least three years of practical experience in the business, and who shall have passed a satisfactory examination before the State Board of Pharmacy."

Persons of the first class are not required to submit to an examination as to their experience or qualifications.   The same section provides, in substance, first, that all persons shall be entitled to be registered as

practicing assistant pharmacists, without an examination, who have had five years' experience immediately preceding the passage of the act; and second, those who have served a three years' apprenticeship in the business, and pass a satisfactory examination.

It is equally clear that all graduates in pharmacy shall be entered as registered assistant pharmacists. The board has no right to inquire into the qualifications of two classes of persons who may apply for registration; first, those who were actually engaged in the business at the time of the passage of the act; and second, graduates in pharmacy. It can not reasonably be supposed that the Legislature intended to enact a law requiring persons, who had then been in a business for perhaps the greater portion of a life, to pass a satisfactory examination as to it before a board of examiners, or else abandon it; and it is clear, from the language of the act, that if an examination is not required of this class, that then graduates in pharmacy of an incorporated college are also entitled to be registered without submitting to it. The second section expressly says what classes of persons shall be examined—*expressio unius est exclusio alterius*—and the provision in the fourth section, that it shall be the duty of the board to examine *all* applicants, must be held to refer to all those whom the act has already provided shall be examined; and this view is confirmed by the fact that there is immediately coupled with the provision the further one, that the board shall "direct the registration by the register of all persons properly qualified *or entitled thereto.*"

If this construction be incorrect, then all of the sec-

ond section relating to an examination is surplusage, as well as the words "or entitled thereto" in the fourth section.

It is urged that the act was intended as a police measure for the protection of the public from incompetent druggists; and that, therefore, it should be construed so as to require all applicants to be examined. Certainly this was its object, and beyond question the law is a salutary one, but until a comparatively late period there was no law whatever upon the subject in this State, and the business, like any other, was left to regulate itself. In some of the States the Legislatures have refused to legislate upon the subject; and in view of legislative history upon the subject, it is reasonable to presume that our Legislature concluded that it was a sufficient step in advance to require an examination of all persons save those then in the business and graduates of incorporated colleges of pharmacy. It does not exempt the graduates of colleges of pharmacy generally, but only such as are incorporated and under the aegis of the law. It follows that any rule of the board, forbidding the registration of any one who had not served an apprenticeship with an apothecary, is invalid as to those engaged in the business when the law was enacted, and as to the graduates of incorporated colleges of pharmacy. The corporation exists by virtue of the legislative act. It draws its breath from it, and any rule or act in violation of it is *ultra vires* and void.

If the performance of an act rests in the discretion of the person or body of whom performance is required, mandamus will not lie. If judgment is to be

exercised, or the act be of a judicial character, depending upon the discretion of the power that may perform it, then a court will not interfere by means of this writ, which ought not to issue except where the right is clear. Even a judge, however, may be compelled by it to act. Thus, he may be required to pass upon a bill of exceptions, but not in a particular way. The direction his judgment may take can not be controlled, and thus produce a particular result. In this instance, however, a plain duty was to be performed, provided the applicant was a graduate in pharmacy of an incorporated college of pharmacy. If so, the board had no discretion in the matter. It was simply their duty to direct the registration, and in such a case the writ will lie.

In our opinion, the term "graduates," as used in the act, should not be restricted to the graduates of an incorporated college of pharmacy of this State. If the Legislature had so intended, we think they would have said so. Moreover, this is not probable, owing to the scarcity of such colleges in this State. This brings us to the consideration of the question, whether the appellee is a graduate in pharmacy of an incorporated college of pharmacy.

Scientific authorities appear to agree that the term "pharmaceutical chemist" embraces that of pharmacist. The latter is one who possesses the knowledge and skill necessary to compound and dispense medicines; while the former, in addition to such knowledge and skill, is also able to analyze them and detect any adulteration. The knowledge of analytical chemistry is added to that necessary to a dispensing pharmacist;

and as the one necessarily includes the other, the graduation of the appellee as a "pharmaceutical chemist" necessarily conferred the honor of "a graduate in pharmacy."

It is, however, urged that she is the graduate of *a school* of pharmacy and not of a college of pharmacy. The term "school" is a generic one. In its broad sense it includes all educational institutions. Generally speaking, school and college are convertible terms. It is correct to speak of any educational institution as "a school." In both England and France the institutions in which pharmacists receive their final education are termed "schools;" and the colleges of pharmacy in this country are so termed by the United States Commissioner of Education. Really, however, whether any particular school is a college or not, depends upon the facts of the particular case. It may ambitiously so style itself and not be such. Here, however, is an institution stamped as a university or college by law. Its curriculum shows it to be one of high order, and its reputation so stamps it. Its "school of pharmacy" is merely one of its departments ; and when the term is thus applied in an advanced institution of learning, it and the term "college" are convertible into each other. The officers of this college confer the degree of pharmacy or "pharmaceutical chemist;" and it may as well be said that a graduate of the School of Mines of Columbia College, or of the Sheffield Scientific School of Yale, or of the Dane Law School of Harvard, is not a graduate of those colleges respectively, as to say that a graduate of the School of Pharmacy of the Univer-

sity of Michigan is not a graduate of the latter insti-
tution. "Schools of pharmacy" are connected with,
and so termed, by the Vanderbilt University: also that
of Virginia, Iowa and Louisiana—institutions ranking
as high as any in the land—and surely their graduates
in pharmacy are those of colleges of pharmacy. The
School of Pharmacy of the Michigan University, as
indeed do all such schools of a like grade, instructs
its graduates not only in the theory, but the practical
part of the business. They may not be qualified to
conduct the merely mercantile part of it to a success-
ful issue, but they are educated, both theoretically and
practically, in all that affects the safety and health of
the public.

It is gratifying to see American women coming to the
front in these honorable pursuits. The history of civil-
ization in every country shows that it has merely kept
pace with the advancement of its women. The Brah-
min's wife was burnt with his dead body. The Ma-
homedan woman is a slave for the man. The husband
of the English wife formerly had a right to chastise
her; and by a fiction of law her legal identity was
completely absorbed in him. We are leaving mock-
eries behind us; and it is gratifying that these matters
are now a long ways in the past.

Judgment affirmed.