# NASHVILLE, CHATTANOOGA AND ST. LOUIS RAILWAY *v.* ALABAMA.

**ERROR TO THE SUPREME COURT OF THE STATE OF ALABAMA.**

No 990. Argued October 11, 1888. — Decided October 22, 1888.

A State statute which requires locomotive engineers and other persons, employed by a railroad company in a capacity which calls for the ability to distinguish and discriminate between color signals, to be examined in this respect from time to time by a tribunal established for the purpose, and which exacts a fee from the company for the service of examination, does not deprive the company of its property without due process of law, and, so far as it affects interstate commerce, is within the competency of the State to enact, until Congress legislates on the subject.

The provision in Article III. of the Constitution of the United States which provides that the trial of all crimes " shall be held in the State where the said crimes shall have been committed," relates only to trials in Federal Courts, and has no application to trials in State Courts.

THE case is stated in the opinion of the court.

*Mr. Oscar R. Hundley* for plaintiff in error.

*Mr. T. N. McClellan*, Attorney General of the State of Alabama, for defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

A statute of Alabama which took effect on the first of June, 1887, " for the protection of the travelling public against accidents caused by color blindness and defective vision," declares that all persons afflicted with color blindness and loss of visual power to the extent therein defined are " disqualified from serving on railroad lines within the State in the capacity of locomotive engineer, fireman, train conductor, brakeman, station agent, switchman, flagman, gate tender, or signal man, or in any other position which requires the use or discrimination of form or color signals," and makes it a misdemeanor punishable by fine of not less than ten nor more than fifty dollars for each offence, for a person to serve in any of the capacities mentioned without having obtained a certificate of fitness for his position in accordance with the provisions of the act. It provides for the appointment by the governor of a suitable number of qualified medical men throughout the State to carry the law into effect; and for the examination by them of persons to be employed in any of the capacities mentioned; prescribes rules to govern the action of the examiners, and allows them a fee of three dollars for the examination of each person. It declares that re-examinations shall be made once in every five years, and whenever sickness, or fever, or accidents, calculated to affect the visual organs have occurred to the parties, or a majority of the board may direct; that the examinations and re-examinations shall be made at the expense of the railroad companies; and that it shall be a misdemeanor, punishable by a fine of not less than fifty nor more than five hundred dollars for each offence, for any such company to employ a person in any of the capacities mentioned, who does not possess a certificate of fitness therefor from the examiners in so far as color blindness and the visual organs are concerned.

The defendant, The Nashville, Chattanooga and St. Louis Railway Company, is a corporation created under the laws of

Tennessee, and runs its trains from Nashville in that State to various points in other States, twenty-four miles of its line being in Alabama, two miles in Georgia, seven in Kentucky, and four hundred and sixty-four in Tennessee.

On the 2d of August, 1887, one James Moore was employed by the company as a train conductor on its road, and acted in that capacity, in the county of Jackson, in Alabama, without having obtained a certificate of his fitness so far as color blindness and visual powers were concerned, in accordance with the law of that State. For this employment the company was indicted in the Circuit Court of the State for Jackson County, under the statute mentioned, and on its plea of not guilty was convicted, and fined fifty dollars. On appeal to the Supreme Court of the State the judgment was affirmed, and to review it the case is brought on error to this court.

It was contended in the court below, among other things, that the statute of Alabama was repugnant to the power vested in Congress to regulate commerce among the States, and that it violated the clause of the Fifth Amendment which declares that no person shall be deprived of his property without due process of law. The same positions are urged in this court, with the further position that the statute is in conflict with the clause in the third article of the Constitution, which provides that the trials of all crimes shall be held in the State where they were committed.

The first question thus presented is covered by the decision of this court rendered at the last term in *Smith* v. *Alabama*, 124 U. S. 465. In that case the law adjudged to be valid required as a condition for a person to act as an engineer of a railroad train in that State, that he should be examined as to his qualifications by a board appointed for that purpose, and licensed if satisfied as to his qualifications, and made it a misdemeanor for any one to act as engineer who violated its provisions. The act now under consideration only requires an examination and license of parties, to be employed on railroads in certain specified capacities, with reference to one particular qualification, that relating to his visual organs;

but this limitation does not affect the application of the decision.   If the State could lawfully require an examination as to the general fitness of a person to be employed on a railway, it could of course lawfully require an examination as to his fitness in some one particular.   Color blindness is a defect of a vital character in railway employés in the various capacities mentioned.   Ready and accurate perception by them of colors, and discrimination between them, are essential to safety of the trains, and, of course, of the passengers and property they carry. . It is generally by signals of different colors, to each of which a separate and distinct meaning is attached, that the movement of trains is directed.   Their starting, their stopping, their speed, the condition of switches, the approach of other trains, and the tracks in such case which each should take, are governed by them.   Defects of vision in such cases on the part of any one employed may lead to fatal results. Color blindness, by which is meant either an imperfect perception of colors, or an inability to recognize them at all, or to distinguish between colors, or between some of them, is a defect much more common than is generally supposed.   Medical treatises of recognized merit on the subject represent as the result of extended examinations that a fraction over four per cent of males are color blind.   With some the defect is congenital, with others brought on by occupations in which they have been engaged, or by vicious habits in the use of liquors or food in which they have indulged.   It presents itself in a great variety of forms, from an imperfect perception of colors to absolute inability to recognize them at all.

Such being the proportion of males thus affected, it is a matter of the greatest importance to safe railroad transportation of persons and property that strict examination be made as to the existence of this defect in persons seeking employment on railroads in any of the capacities mentioned.

It is conceded that the power of Congress to regulate interstate commerce is plenary; that, as incident to it, Congress may legislate as to the qualifications, duties, and liabilities of employés and others on railway trains engaged in that commerce; and that such legislation will supersede any state

action on the subject. But until such legislation is had, it is clearly within the competency of the States to provide against accidents on trains whilst within their limits. Indeed, it is a principle fully recognized by decisions of State and Federal courts, that wherever there is any business in which, either from the products created or the instrumentalities used, there is danger to life or property, it is not only within the power of the States, but it is among their plain duties, to make provision against accidents likely to follow in such business, so that the dangers attending it may be guarded against so far as is practicable.

In *Smith* v. *Alabama*, this court, recognizing previous decisions where it had been held that it was competent for the State to provide redress for wrongs done and injuries committed on its citizens by parties engaged in the business of interstate commerce, notwithstanding the power of Congress over those subjects, very pertinently inquired: "What is there to forbid the State, in the further exercise of the same jurisdiction, to prescribe the precautions and safeguards foreseen to be necessary and proper to prevent by anticipation those wrongs and injuries which, after they have been inflicted, it is admitted the State has power to redress and punish? If the State has power to secure to passengers conveyed by common carriers in their vehicles of transportation a right of action for the recovery of damages occasioned by the negligence of the carrier in not providing safe and suitable vehicles, or employés of sufficient skill and knowledge, or in not properly conducting and managing the act of transportation, why may not the State also impose, on behalf of the public, as additional means of prevention, penalties for the non-observance of these precautions? Why may it not define and declare what particular things shall be done and observed by such a carrier in order to insure the safety of the persons and things he carries, or of the persons and property of others liable to be affected by them?" Of course but one answer can be made to these inquiries, for clearly what the State may punish or afford redress for, when done, it may seek by proper precautions in advance to prevent. And the court in that case

held that the provisions in the statute of Alabama were not strictly regulations of interstate commerce, but parts of that body of the local law which governs the relation between carriers of passengers and merchandise and the public who employ them, which are not displaced until they come in conflict with an express enactment of Congress in the exercise of its power over commerce, and that until so displaced they remain as the law governing carriers in the discharge of their obligations, whether engaged in purely internal commerce of the State, or in commerce among the States. The same observations may be made with respect to the provisions of the state law for the examination of parties to be employed on railways with respect to their powers of vision. Such legislation is not directed against commerce, and only affects it incidently, and therefore cannot be called, within the meaning of the Constitution, a regulation of commerce. As said in *Sherlock* v. *Alling*, 93 U. S. 99, 104, legislation by a State of that character, "relating to the rights, duties, and liabilities of citizens, and only indirectly and remotely affecting the operations of commerce, is of obligatory force upon citizens within its territorial jurisdiction, whether on land or water, or engaged in commerce, foreign or interstate, or in any other pursuit." In our judgment the statute of Alabama under consideration falls within this class.

The second position of the plaintiff in error, that the state statute is repugnant to the provision of article third of the Constitution, which declares that the trial of all crimes shall be held in the State where they have been committed, is readily disposed of. The provision has reference only to trials in the Federal courts; it has no application to trials in the state courts.

As to the third position of the plaintiff in error, assuming that counsel intended to rely upon the Fourteenth instead of the Fifth Amendment, (as the latter only applies a limit to Federal authority, not restricting the powers of the State,) we do not think it tenable. *Barron* v. *Baltimore*, 7 Pet. 243 ; *Livingston* v. *Moore*, 7 Pet. 469. Requiring railroad companies to pay the fees allowed for the examination of parties who

are to serve on their railroads in one of the capacities mentioned, is not depriving them of property without due process of law. It is merely imposing upon them the expenses necessary to ascertain whether their employés possess the physical qualifications required by law.

*Judgment affirmed.*