CASE 84—TEST CASE BETWEEN THE BOARD OF PHARMACY, &C., AGAINST R. J. CASSIDY, &C., FOR AN ADJUDICATION OF THE EFFECT OF AN ACT TO "REGULATE THE PRACTICE OF PHARMACY IN THE COMMONWEALTH OF KENTUCKY."—MAY 28.

# Kentucky Board of Pharmacy, &c. v. Cassidy, &c.

APPEAL FROM FAYETTE CIRCUIT COURT.

FROM THE JUDGMENT THE BOARD APPEALS.  AFFIRMED.

REGISTERED PHARMACISTS—SALE OF PATENT AND PROPRIETARY MEDICINES.

Held:  Kentucky Statutes, 1899, section 2619, provides that except as provided in the act, it shall be unlawful for one not a registered pharmacist to vend at retail, compound, or dispense any drug, medicine, poison, or pharmaceutical preparation for medical use.  Section 2620 declares guilty of a misdemeanor an

owner of a drug store, not a registered pharmacist who shall fail to place a registered pharmacist in charge, or shall permit the compounding of prescriptions or the vending at retail of drugs, medicines, poisons, or pharmaceutical preparations, except under the immediate supervision of a registered pharmacist. Section 2630 provides that no one shall retail poison except under a label bearing the word "Poison," and giving the names of antidotes, and in certain cases keeping a record. Section 2631 provides that any person not a registered pharmacist may conduct a drug store if he keep a registered pharmacist in charge, but shall not himself sell or dispense drugs or medicines, except proprietary or patent medicines. Section 2632 provides that the act shall not interfere with the sale of the usual non-poisonous domestic remedies and medicines and patent or proprietary medicines by county stores in small places or rural districts. HELD, that the act does not prevent any one selling patent or proprietary medicines.

HELM, BRUCE & HELM, FOR APPELLANTS.

This agreed case was made up for the purpose of having determined the constitutionality of the Act of March 5, 1898, known as the Pharmacy Act, Kentucky Statutes, 1899 edition, sections 2619-2635, inclusive.

The judgment below was against the validity of the act, and the Board of Pharmacy prosecutes this appeal.

The police power has been so often recognized, applied and upheld in this country that it would seem absurd to cite authorities to establish its existence, and it would be equally unnecessary to argue so plain a proposition as that the sale of drugs which may or may not contain ingredients poisonous in their nature and dangerous to life, falls within the police power. Indeed, it is submitted that the exercise of the police power finds here a typical case, so plain that the bare statement of the proposition is sufficient.

It is, therefore, apparent that whether the judgment appealed from be correct or not depends not upon whether the State has the right to exercise its police powers touching the sale of drugs or compounds, but whether this particular statute violates the provisions of the Constitution. We have undertaken to show that the section relied on has no application to this case, but it may not be out of place to state that the court will never feel itself at liberty to hold an act obviously intended to protect public health to be unconstitutional without feeling itself constrained to do so by the most obvious and irreconcilable conflict between the act and the Constitution. The Legislature in

such cases must, in the public interest, be given practically a
free hand ,and before such an act can be held unconstitutional
the conflict must be obvious.

It may not be improper to say now a few words on the neces-
sity for such regulation, though it is submitted that the court
should presume, in the absence of knowledge, that such a nec-
essity did exit or the act would never have been adopted.

There are a number of these patent remedies which contain
substances deleterious to health. For instance, in Bull's Cough
Syrup, a remedy in common use for coughs and colds, there is
contained a large amount of morphine and quite a number of
people have been injured by taking the syrup. Ely's Cream
Balm, and almost all of the extracts of cocoa, contain cocaine.
The taking of these remedies is very much to be regretted be-
cause they tend to produce the cocaine habit. A number of
other proprietary remedies contain cocaine, and it is certainly
a matter of public knowledge and experience that nothing so
undermines one's constitution and character as to become ad-
dicted to the cocaine habit. A registered pharmacist knowing
the fact that cocaine is included in these remedies is, by the
sixth section of the act of last winter, approved March 20, 1902,
pages 81 to 84, inclusive, forbidden to sell these remedies *except
upon the prescription of physicians.* The section reads:

"Cocaine or its salts shall be sold at retail or dispensed only
upon the written prescription of a legally qualified physician or
dentist, and such prescription shall not be refilled. Each pre-
scription, containing cocaine or its salts, filled by a registered
pharmacist, shall have written upon its face the name of the
patient, the date it is filled, and the prescription file of each
registered pharmacist shall be open to the inspection of the
members of the Kentucky Board of Pharmacy, or its authorized
inspector." It is also provided by that section that "every per-
son failing to comply with its requirements shall be deemed
guilty of a misdemeanor and upon conviction shall pay a fine
of not less than fifty dollars." And it is further provided that
any physician or dentist who shall prescribe, buy for or sell
or dispense to any person for any purpose other than legitimate
use, or otherwise deal in cocaine or its salts than as herein pro-
vided shall thereby render himself amenable to the penalties
hereinbefore in this section provided, and it is further provid-
ed that "any registered pharmacist who violates any provisions
of the section, or who by any subterfuge, sells or dispenses
cocaine or its salts otherwise than as provided in the section
shall in addition to paying the fine imposed, on the second con-
viction, forfeit his certificate as registered pharmacist, and his

name shall be stricken from the register." And this section was regarded as so important to public health as to be made the basis for an immediate taking effect of the act.

To permit then people, other than registered pharmacists, to handle these various proprietary remedies containing cocaine with its dangerous tendency to public health and morals, is to deliberately tear away the safeguards to public health deliberately erected by the Legislature.

The sale of Birney's headache powder in this State is said to have increased very largely on account of the cocaine in it. This also has the effect of fixing the cocaine habit.

Ayer's Cherry Pectoral, according to its analysis, contains tartar-emetic and morphine, both of which are poison, and there is a whole line of such proprietary medicines which do contain poison. A registered pharmacist knowing of this provision would not sell them without taking the necessary precautions. All cough medicines contain morphine to a greater or less degree, and some of the preparations contain opium and a great many contain mercury. Especially is this true of the so-called blood purifiers. In addition to that there are many of the coal tar remedies as cephalgine that are heart depressants, and when taken by a person with defective heart become quite dangerous.

Now the registered pharmacist who attends to his duties as prescribed by the statute is able to avoid these dangers, and if the presumption is indulged that they do not analyze these medicines, still the analysis is published continually of all of them in the various pharmaceutical journals, and in that way the pharmacists who keep up with their business are in constant touch with the various proprietary remedies and their dangers.

In conclusion we submit that the court can not without great danger to the public health and safety hold this act to be unconstitutional. We therefore respectfully ask that the judgment be reversed with directions to enter a judgment for the Kentucky Board of Pharmacy.

### ADDENDA.

1. The pharmacy act was passed under the police power and must be enforced, unless it be obviously in conflict with the Constitution. This court will not, except on the gravest consideration, hold an act adopted for preservation of the public health unconstitutional.

2. The Constitution providing against exclusive privileges, has no application to this case. Sarris v. Commonwealth, 83 Ky., 328.

T. L. EDELEN, FOR APPELLANTS.

### POINTS AND CITATIONS.

1. A critical examination of the pharmacy act (Acts 1898, p. 164) will show:

(a) That it was the intention of the Legislature to limit the sale of patent and proprietary remedies to registered pharmacists (this seems to be conceded).

(b) An examination will further show that the provisions with reference to the sale of patent and proprietary remedies can not be separated from the remainder of the act, because the provisions with reference to the sale of poisons, spirituous liquors and emmenagogues, would thereby become a dead letter.

2. It is competent for the Legislature to pass an act regulating the practice of pharmacy. Lafferty v. Huffman, &c., 99 Ky., 80; Com. v. Shelton, Id., 120; Com v. Hardin Co Ct., Id., 188; Guckenheimer v. Sellers, 81 Fed Rep., 997; McGregor v. Cone, 104 Iowa, 465; 39 L. R. A., 484; Rhodes v. Iowa, 170 U. S., 412; May v. New Orleans, 178 U. S., 496; Mitchell v. Com., 106 Ky., 602; Marshall v. Donovan, 10 Bush, 681; C. & O. Ry. Co. v. Barren Co. Ct., 10 Bush, 604; Thompson v. Carr, 13 Bush, 215; Com. v. Wright, 79 Ky., 22; Burnside v. Lincoln Co. Ct., 86 Ky., 423; Cooley Const. Lim., 164; 3 Am. & Eng. Ency. of Law, 676, note 3; Bullitt v. City of Paducah, 8 Ky. Law Rep., 870; Driscoll v. Com., 93 Ky., 393; Hargan v. Purdy, Id., 424; State Board of Pharmacy v. White, 84 Ky., 626; Kentucky Board of Pharmacy v. Lordier, 22 Ky. Law Rep., 621; State v. Heinemann, 80 Wis., 253; 27 Am. St. Rep., 35; State v. Forcier, 65 N. H., 42; People v. Moorman, 86 Mich., 433; Dent v. State of West Virginia, 129 U. S., 114; Brooks v. State, 88 Ala., 124; State v. Webster, 150 Ind., 616; 41 L. R. A., 217; Craig v. Examiners, etc., 12 Mont., 211; State v. Call, 121 N. C., 646; France v. State, 57 O. St., 23; State v. Randolph, 23 Ore., 82, 37 Am. St. Rep., 658, 17 L. R. A., 472; People v. Hosprouck, 11 Utah, 302; State v. Carey, 4 Wash., 430; Gosnell v. State, 52 Ark., 232; State v. Creditor, 44 Kan., 567, 21 Am. St. Rep., 308; Gunding v. Chicago, 177 U. S., 183 (44 L. ed., 725); Pettit v. Minnesota, 177 U. S., 164 (44 L. ed., 716); Barbier v. Connolly, 113 U. S., 27 (28 L. ed., 923); Slaughter House Cases (16 Wall.), 21 L. ed., 394; Higgins v. Rinker, 47 Tex., 381; State v. Gurney, 37 Me., 156; State v. Dow, 53 L. R. A., 314; State v. Ah Chew, 16 Nev., 50.

3. The cases of Theo. Noel v. People of the State of Illinois, 187 Ill., 587 (52 L. R. A., 287), and State v. Donaldson, 41 Minn., 74, are not, when examined in the light of the statutes construed, either against the contention here made, but if they

are, then they are not in line with the overwhelming current of authority both in this State and in other jurisdictions.

J. EMBRY ALLEN, ATTORNEY FOR APPELLEE.

This action was brought upon the agreed state of facts, set out in the record by the appellee against the appellant in the Fayette circuit court, for the purpose of testing the validity and constitutionality of the act of the Kentucky Legislature known as the Kentucky Pharmacy Law, and entitled "An act to regulate the practice of pharmacy in the Commonwealth of Kentucky and, to establish a board of pharmacy and define the powers and duties thereof," which passed without the governor's signature at the session of 1898, and is now contained in sections 2619 to 2635, inclusive, of the 1899 edition of the Kentucky Statutes. The appellees have been for years engaged in the sale of patent and proprietary medicines as a means of livelihood, and being prevented and prohibited by this act, from carrying on their business, have brought this suit to test the validity of the act. The lower court thought their contention a valid one and held the act to be void and unconstitutional in so far as it prohibited appellees from engaging in the business of selling and vending patent or proprietary medicines, from which judgment the appellant has appealed.

The first, thirteenth and fourteenth sections of the act are the only ones which we think material to this controversy.

Section 1 reads as follows: "That except as in this act provided it shall hereafter be unlawful in the Commonwealth of Kentucky for any person, who is not a registered pharmacist within the meaning of this act, to vend at retail, compound or dispense any drug, medicine, chemical, poison, or pharmaceutical preparation for medical use, or compound and dispense physicians' prescriptions. Any person violating the provisions of this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be liable to a fine of not less than twenty nor more than fifty dollars for each and every offense."

Sections 2 to 12 inclusive define the powers of the board and prescribe how a person may become a registered pharmacist, etc.

Section 13 reads as follows: "Any person, or persons, not a registered pharmacist, may open, own or conduct a drug store or pharmacy, if he or they keep constantly in charge of the same a registered pharmacist; but shall not himself or themselves sell or dispense drugs or medicines, *except proprietary or patent medicines in original packages.*"

Section 14. Nothing in this act shall be construed so as to apply to, or in any manner interfere with, the sale of the usual

non-poisonous, domestic remedies and medicines, and patent or proprietary medicine by county stores in small places or rural districts.

The Bill of Rights declares: "All men are, by nature, free and equal, and have certain inherent and inalienable rights, among which may be reckoned . . . the right of acquiring and protecting property."

Section 3 of the Constitution declares " . . . and no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services . . ."

We hold that the pharmacy law is in violation of the Constitution of Kentucky and of the United States, for three reasons:

1. The State has no power to restrict or deny the natural right of man to engage in any lawful occupation unless such restriction or denial become necessary for the general good, which we call the exercise of the police power, and we claim that in this case there is no good or advantage resulting to the general public in any way from the restriction placed by this act upon the sale of patent and proprietary medicine.

2. Even if the State has the right to restrict or regulate the manner of engaging in certain business it must exercise this power in a way that will regulate *all* the people and not just a *part* of them. It must be a regulation that applies to and affects alike all persons under similar circumstances and who stand in the same position and attitude before the law with respect to the subject of the regulation. And the State can not make a general law or police regulation and then, by a proviso, except a certain class of individuals from its operation. If that be done the whole act becomes void.

3. If the subject matter be one about which the State has a right to make police regulations, yet if the act shows on its face that it restricts or abridges private rights, and at the same time does not, and could not, protect public health, life, morals, comfort, or otherwise tend to help the public good, it is the duty of the court to declare the act invalid and unconstitutional.

### AUTHORITIES CITED.

Bill of Rights; section 3, Constitution of Kentucky; 14th Amendment, Constitution of the United States; Andrew's American Law, 458; Atkinson v. Goodrich Trans. Co., 60 Wis., 141; 50 Am. Rep., 352; North Chicago Ry. Co. v. Lake View, 105 Ill., 211; Richie v. People, 155 Ill., 98; *In re* Jacobs, 98 N. Y., 98-114; State v. Monroe, 104 N. C., 714; 17 Am. St. Rep., 696; Austin v. Murray, 16 Pick, 121-6; Watertown v. Mayo, 109

Mass., 315; Coe v. Schultz, 47 Barb., 64; State v. Donaldson, Minn., 42 N. W., 781-3; Noel v. People, Ill., 58 N. E., 618; Eden v. People, Ill., 43 N. E., 1108; Cooley's Const. Lim., 1st ed., 393; Frorer v. People, 141 Ill., 171, 31 N. E., 395; Chicago v. Netcher, 183 Ill., 113; 55 N. E., 707; Com. v. Fowler, 96 Ky., 166; Barbier v. Connelly, 113 U. S. Supreme Court Reports, 920.

OPINION OF THE COURT BY JUDGE BARKER—AFFIRMING.

This is an agreed case in equity, instituted in the Fayette circuit court for the purpose of obtaining an adjudication of the effect of an act to "regulate the practice of pharmacy in the Commonwealth of Kentucky, and to establish a board of pharmacy, and define the powers and duties thereof," which constitutes article 2, c. 85, Ky. St. 1899, upon the business of appellees. The act in question establishes a board of pharmacy, and regulates the sale of drugs and medicines by retail and the compounding of physicians' prescriptions in the State of Kentucky. Section 2621 prescribes how the Kentucky Board of Pharmacy shall be appointed and organized. Section 2622 enumerates the duties of the board, among which is the following: "It shall be the duty of the said board to examine all applicants for registration submitted in proper form; to grant certificates of registration to such persons as may be entitled to same under the provisions of this act; to investigate complaints, and to cause the prosecution of all persons violating the provisions of this act." The qualifications of applicants, and the manner in which they may receive certificates as registered pharmacists, and their rights and duties after having received certificates, are prescribed in sections 2624-2628. By section 2619 it is provided that "Except as in this act provided, it shall hereafter be unlawful, in the Commonwealth of Kentucky, for any person who is not a registered pharmacist, within the meaning of this

act, to vend at retail, compound or dispense any drug, medicine, chemical poison, or pharmaceutical preparation for medical use, or compound and dispense physicians' prescriptions. Any person violating the provisions of this section shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be liable to a fine of not less than twenty nor more than fifty dollars for each and every offense." Section 2620: "Any owner of a pharmacy, or retail drug store, who not being a registered pharmacist, shall fail or neglect to place in charge of such pharmacy or drug store a registered pharmacist, or any such proprietor who shall by himself, or any other person, permit the compounding or dispensing of prescriptions, or the vending at retail of drugs, medicines, poisons or pharmaceutical preparations in his store or place of business, except by or in the presence and under the immediate supervision of a registered pharmacist, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be liable to a fine of not less than twenty-five nor more than one hundred dollars, and each week that he shall cause or permit said pharmacy or retail drug store to be so conducted or managed shall constitute a separate and distinct offense, and render him liable to separate prosecution and punishment therefor." Section 2629 forbids the adulteration of drugs, and provides for the prosecution of offenders against the provision. Section 2630: "No person shall sell at retail any poisons, except as herein provided, without affixing to the bottle, box, vessel, or package containing the same, a label printed or plainly written, containing the name of the article, the word 'Poison,' and the name and place of business of the seller, with the common name of two or more readily accessible antidotes, nor shall he deliver poison to any person without satisfying himself that such poison is to be

used for legitimate purposes. A poison in the meaning of
this act shall be any drug, chemical or preparation, which
according to standard works on medicine or materia medica,
is liable to be destructive to adult human life in quantities
of sixty grains or less. It shall be the further duty of any
one selling or dispensing poisons, which are known to be
destructive to adult human life in quantities of five grains
or less, before delivering them, to enter into a book kept for
that purpose the name of the seller, the name and resi-
dence of the buyer, the name of the article, the quantity sold
or disposed of, and the purpose for which it is said to be in-
tended, which book of registry shall be kept for at least
two years and shall at all times be open to the inspection
of the coroner of the court in which the same may be kept.
Oil of tansy, oil of savin, ergot, and its preparations, cotton
root and its preparations, and all other active emmena-
gogues or abortives, shall be sold at retail or dispensed only
upon the written prescription of a legally qualified physi-
cian. The provisions of this section shall not apply to the
dispensing of poisons in not unusual quantities, or doses,
on physicians' prescriptions, nor to the sale to agricultur-
ists or horticulturists, of such articles as are commonly used
by them as insecticides. Every person failing to comply
with the requirements of this section shall be deemed guilty
of a misdemeanor, and upon conviction thereof shall pay a
fine of not less than ten dollars." Section 2631: "Any
person, or persons, not a registered pharmacist, may open,
own, or conduct a drug store or pharmacy, if he or they keep
constantly in charge of the same a registered pharmacist;
but shall not himself or themselves sell or dispense drugs
or medicines, except proprietary or patent medicines in or-
iginal packages." Section 2632: "Nothing in this act shall
be construed so as to apply to, or in any manner interfere

with the sale of the usual non-poisonous domestic remedies
and medicines, and patent or proprietary medicine, by coun-
ty stores in small places or rural districts.  Nothing in
this act shall apply to, or in any manner interfere with,
the business of any licensed practicing physician, or pre-
vent him from supplying to his patients such articles as
may seem proper to him, or with his compounding his own
prescriptions."

The agreed facts show that the appellees are engaged in
the business of vending at wholesale and retail a certain
proprietary medicine known as "Vitae-Ore," in Lexington,
Ky., which is a kind of sub-acid drink, possessing, as it
claims, valuable medicinal qualities; that they are, and
have been for a number of years, engaged in the business
of vending and selling at retail in this State various patent
and proprrietary medicines, manufactured and compounded.
both in and out of this State; that these medicines are sold
at retail in the original packages or bottles in which they
are put up by the manufacturer and proprietor, without
breaking the seal, or in any way changing or adding to the
medicine or composition.  Appellees are not registered
pharmacists, nor entitled to be registered as such.  They
are not druggists, and do not keep, own, or conduct a drug
store, pharmacy, or county store in a small place or rural
district; nor do they compound drugs, medicines, or physi-
cians' prescriptions, or employ a registered pharmacist in
superintendence.  It is the usual practice or custom of
druggists in this Commonwealth, who are not registered
pharmacists, to sell at retail patent and proprietary med-
icines in the same manner with reference to the quantity
of the medicine and the package in which the same is sold
as the appellees carry on their business.  The term "orig-
inal package," as applicable to the sale of patent and pro-

prietary medicines, means, and is so understood by all persons, the small individual package or bottle as prepared for retail, and not the large box or package in which the small packages may have been shipped by the manufacturer. There are many more agreed facts contained in the written stipulations between the parties to this action, which are not thought necessary to be set out herein; the real question for adjudication being whether or not the sale of patent and proprietary medicines in the manner shown by the agreed facts which are set out violates the provisions of the statute under discussion.

It can not be questioned that the language of sections 2619 and 2620 would include within their scope patent and proprietary medicines, unless that conclusion is forbidden by the language of other sections of the statute to be noticed hereafter. Nor can the constitutionality of the act be successfully assailed. The right of the Legislature to enact laws necessary to protect the lives and health of the citizens from the acts of incompetent and unskilled pharmacists, under the police power of the Commonwealth, is so well settled as hardly to need either argument or citation of authority to support it. This very act, or similar acts preceding it, have been recognized, approved, and enforced in numerous cases by this court. Commonwealth v. Fowler, 96 Ky., 166, 16 R., 360, 28 S. W., 786, 33 L. R. A., 839; State Board of Pharmacy v. White, 84 Ky., 626, 8 R., 678, 2 S. W., 225; Kentucky Board of Pharmacy v. Lordier (109 Ky., 119, 21 R., 621), 58 S. W., 531. From the case of State v. Heinemann, 80 Wis., 253, 49 N. W., 818, 27 Am. St. Rep., 34, we make the following quotation as containing a most admirable presentation of the right of the State, in the exercise of its police power, to enact laws to preserve and protect the health and lives of the citizens from the conse-

quences of unskilled compounding of dangerous and deadly drugs: "Was it not within the power of the Legislature to thus protect the health and lives of citizens throughout the State from improper, dangerous, and destructive compounds, put up by incompetent or inefficient persons? All courts agree that the police power of the State extends to all regulations affecting the lives, limbs, health, comfort, goor order, morals, peace, and safety of society, and hence may be exercised on many subjects and in numerous ways. Baker v. State, 54 Wis., 372 [12 N. W., 12]; State v. Ryan, 70 Wis., 681 [36 N. W., 823]. In speaking of such power, Mr. Justice Field, in a recent case, said: 'The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed, by the governing authority of the country, essential to the safety, health, peace, good order, and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will. It is only freedom from restraint, under conditions essential to equal enjoyment of the same right by others. It is then liberty regulated by law.' Crowley v. Christensen, 137 U. S., 89 [11 Sup. Ct., 13, 34 L. Ed., 620]. This principle has been applied in many ways, and to a variety of vocations. Thus it has been held that a State may require locomotive engineers therein to be examined and licensed by a board created for that purpose, and make it unlawful to operate without such license. Smith v. Alabama, 124 U. S., 465 [8 Sup. Ct., 564, 31 L. Ed., 508]; Nashville, etc., Ry. Co. v. Alabama, 128 U. S., 96 [9 Sup. Ct., 28, 32 L. Ed., 352]. So it has been held that a State may lawfully regulate the manufacture and sale of oleomargarine. Powell v. Penn., 127 U. S., 678 [18 Sup Ct., 992, 1257, 32 L. Ed., 253], affirming Powell v. Commonwealth, 114 Pa., 265, 7 Atl., 913, 60 Am. Rep., 350; Com-

monwealth v. Weiss, 139 Pa., 247 [21 Atl., 10, 11 L. R. A.,
530], 23 Am. St. Rep., 182; People v. Arensberg, 105 N. Y.,
123 [11 N. E., 277], 59 Am. Rep., 483.  So it has been held
that the State may lawfully require every practitioner of
medicine therein to obtain a license from a State board
created therefor, as evidence of his qualification to so prac-
tice, and make it unlawful to practice without first obtain-
ing such license.  Dent v. West Virginia, 129 U. S., 114
[9 Sup. Ct., 231, 32 L. Ed., 623]; Eastman v. State, 109 Ind.,
278 [10 N. E., 97], 58 Am. Rep., 400; Williams v. People,
121 Ill., 86 [11 N. E., 881].  A similar rule has been ap-
plied to dentistry.  Gosnell v. State, 52 Ark., 228 [12 S. W.,
392]; State v. Vandersluis, 42 Minn., 129 [43 N. W., 789,
6 L. R. A., 119]; State v. Creditor, 44 Kan., 565 [24 Pac.,
346], 21 Am. St. Rep., 306.  Also to persons engaged in the
business of plumbing.  Singer v. State, 72 Md., 464 [19 Atl.,
1044, 8 L. R. A., 551].  The case at bar was, in effect, re-
cently decided in New Hampshire, where it was held that
a statute of that State which required the retailers of drugs,
medicines, etc., to submit to an examination and procure a
license is within the police power of the State, and is not a
tax on the business, nor does it deprive of property with-
out due process of law.  State v. Forcier, 65 N. H., 42, 17
Atl., 577.  In that case, as here, it was claimed that the
fee required to be paid by the act rendered the same illegal,
but the court said: 'The fee of five dollars to be paid by the
applicant for a license to engage in the business of an apoth-
ecary and druggist is merely an equivalent for the ser-
vice rendered by the commissioners in making the exam-
ination and issuing the license, and can not be considered
as a tax upon the business, or as depriving the applicant
of his property without due process of law.'  State v. For-
cier, 65 N. H., 42 [17 Atl., 577].To the same effect are Smith

v. Alabama, 124 U. S., 465 [8 Sup Ct., 564, 31 L. Ed., 508]; Nashville, etc., Ry. Co. v. Alabama, 128 U. S., 96 [9 Sup. Ct., 28, 32 L. Ed., 352]."

Tiedeman, in his work on Limitations of Police Power, says: "The ordinary police regulations of employments and professions is most certainly within the power of the State governments."

This court, in numerous cases, has upheld laws prescribing the qualifications of persons desiring to practice law, medicine, and dentistry. In the case of Driscoll v. Commonwealth, 93 Ky., 393, 14 R., 376, 20 S. W., 431, it was said: "We see no reason for denying the right of the Legislature to enact laws for the protection of the people by requiring those who undertake to practice a profession to give evidence of their qualications and skill by the exhibition of a license from those who, in the legislative judgment, are competent to determine whether or not the applicant has the necessary qualifications to practice the particular profession. The citizen, of necessity, when diseased, must employ the physician, and the lawyer when his right of person or property has been violated. The entire public is interested in knowing, or having the means of ascertaining, whether the physician he desires to employ has a sufficient knowledge of medicine to enable him to practice his profession; and for the welfare and safety of the citizens the Legislature may say that you shall not practice medicine unless you have the indorsement of a board skilled in the profession. The patients of the physician must rely on his knowledge of medicine and the mode of administering it, and, the entire public being interested in having physicians learned in the profession, it is competent for the Legislature to prescribe the mode of determining the qualifications of those who propose to embark in the practice.

The constitutional question has been raised and decided by many courts, all holding that, when the conditions imposed upon the profession by the lawmaking power before one can enter upon the practice are reasonable, they must be complied with, or the penalty imposed will be enforced. The Supreme Court, in the case of Dent. v. West Virginia, reported in 129 U. S., 114 [9 Sup. Ct., 231, 32 L. Ed., 623], has determined the constitutionality of such laws in a case where the statute of West Virginia was very much like that of this State. The right of a State to enact such laws proceeds from the inherent power to prescribe such rules as will protect the health and safety of the people. State v. Gregory, 83 Mo., 123, 53 Am. Rep., 565; State v. State Medical Ex. Board, 32 Minn., 324 [20 N. W., 238], 50 Am. Rep., 575; Case of Bauer (Pa.), 4 Atl., 913; Harding v. People (Colo. Sup.), 15 Pac., 727."

The question before us is not only the right of the Legislature to forbid the sale of patent and proprietary medicines except by registered pharmacists, but whether it has done so in the statute. It is manifest, from an inspection of the language of sections 2619 and 2620, that the protection of the citizens from the acts of unskilled pharmacists in the compounding and sale of dangerous medicines is the primary object of the statute. It must occur to every one who reflects upon the subject that there does not exist the same reason for requiring the service of a skilled pharmacist in the sale of patent and proprietary medicines as for the ordinary retailing of drugs and the compounding of physicians' prescriptions. Patent and proprietary medicines are put up upon uniform prescriptions, and placed upon the market ready for use by the consumer. They are sold upon their known or supposed reputation as curative agents. Those

who handle and sell them make no change in their composition or ingredients, and there is, therefore, no danger arising from unskilled compounding or mistakes as to ingredients. Undoubtedly, much of it is worthless, perhaps more is harmful; but ignorance in the compounding does not enter into their manufacture. The statute requires no duty of the registered pharmacist in reference to these medicines. He sells them on the call of his customers, just as they are prepared by the proprietors for retail, and it requires no more scientific skill to do so than to sell soap, or perfumery, or any other like articles usually kept by druggists.

Much was said in the argument at bar, and is said in the brief of counsel for appellant, as to the duty of the pharmacist to apply the provisions of section 2630 to patent and proprietary medicine sold by him. This section forbids the sale of poisons at retail without affixing to the bottle, box, vessel or package containing the drug a label printed or plainly written containing the name of the article, the word "Poison," and the name and place of business of the seller, with the common name of two or more readily accessible antidotes; or the delivery of poison to any person without assurance that it is to be used for legitimate purposes. It is insisted that the section relates to the sale of patent and proprietary medicines as well as other drugs, and this is done to show the necessity for the superintendence of a pharmacist in the matter of their sale. There is little doubt but the provisions of this section apply alone to such deadly poisons as produce immediate harm or death, and not to patent or proprietary medicines, which, if harmful at all, do not at once produce disastrous effects on the human system. We think these medicines do not come within the meaning of the pharmacy act, and that this is shown by the language of sections 2631 and 2632, which are the only parts of the statute in which they are mentioned by

name. The first of these expressly authorizes owners of drug stores who are not registered pharmacists, but who employ one in their business, to themselves sell such medicines; and section 2632 authorizes the owners of county stores to keep them in stock for sale. The language of these two sections shows that the Legislature did not regard these medicines as coming within the scope of the statute, and seem to have been inserted for no other purpose than to place this beyond question.

There can be no reason for denying to appellees the right to sell the medicines in question, and according it to the owners of drug stores and county stores who possess no greater scientific skill in the knowledge of pharmacy. The lives and health of the customers of the owners of county stores and of the customers of such druggists as are authorized to sell patent and proprietary medicines by section 2631 are as sacred in the estimation of the lawmakers as are those of the customers of other drug stores, and, if it had been thought necessary for the protection of the latter to limit the sale of the medicines in question to registered pharmacists, undoubtedly the same protection would have been thrown around the former. The learned chancellor below was of opinion that the act does not apply to the sale of patent and proprietary medicines, and in this we concur.

The judgment is affirmed.

Whole court sitting.