STATE OF MINNESOTA *vs.* M. L. GLADSON.

Argued May 16, 1894.   Affirmed June 1, 1894.

No. 8679.

**Statute requiring railroad passenger trains to stop at county seats, valid.**

Laws 1893, ch. 60, requiring railroad companies to stop all regular passenger trains at county seats, is not unconstitutional or void, either as being an unreasonable regulation or as interfering with interstate commerce.

**Same—although carrying United States mail.**

Said statute is not void as to a train carrying United States mail, which also carries passengers between points within this state.

Appeal by defendant, M. L. Gladson, from a judgment of the District Court of Pine County, *F. M. Crosby,* J., entered January 16, 1894.

Defendant was a locomotive engineer engaged with an engine in hauling the afternoon through passenger train between St. Paul and Duluth.   On July 22, 1893, he run his train as usual through the village of Pine City, county seat of Pine County, at about four o'clock in the afternoon without stopping.   Complaint was made before a Justice of the Peace and he was arrested, tried and convicted. He appealed to the District Court of Pine County where he was again tried, convicted and sentenced to pay a fine of $25 and the costs $30.57.   He appealed, gave bond and obtained a stay of proceedings.

*J. D. Armstrong* and *Bunn & Hadley,* for appellant.

This case should be a landmark of the law indicating a point beyond which the legislative power cannot go in infringement of private rights.   It is now settled that the legislature cannot own and operate the railroads.   *Rippe* v. *Becker,* 56 Minn. 100.   This involves the conclusion that they cannot operate or run railroads without owning them.   The province of the legislature is restricted to regulation, and regulation must be reasonable.

v.57m.—25

The legislature cannot enact unreasonable limitations and restrictions on the speed of trains. To be valid these must fall within the police power, they must be justified by a police necessity. *Evison* v. *Chicago, St. P., M. & O. Ry. Co.,* 45 Minn. 370.

The legislative power to fix rates is limited by the courts to the fixing of reasonable rates. The legislative imposition of unreasonably low rates is a taking of property contrary to the constitutional limitation. *Chicago, M. & St. P. Ry. Co.* v. *Minnesota,* 134 U. S. 418.

This statute is a regulation of interstate commerce not within the power of the state. If passengers or freight are carried on a through contract and rate from one state to another, that business is interstate commerce. Each carrier concerned in the transportation may stop its trains or cars within the state where they started. Such commerce is still interstate, and the vehicles used in the carriage are instruments employed in interstate commerce. The carriage of passengers and express by this train from St. Paul to West Superior was interstate commerce, though there was a transfer at West Duluth to another connecting train running to Superior. *Wabash, St. L. & P. Ry. Co.* v. *Illinois,* 118 U. S. 557; *Norfolk & W. R. Co.* v. *Pennsylvania,* 136 U. S. 114; *The Daniel Ball,* 10 Wall. 557.

We concede the power of the state to pass proper police laws even though they operate incidentally to burden interstate commerce. Such laws do not rest on any power in the state to regulate commerce, but on the power to protect the lives, property, health and morals of the community. On this principle inspection laws, health laws, quarantine laws and similar laws are held valid, though operating on commerce. *Gibbons* v. *Ogden,* 9 Wheat. 1; *Railroad Co.* v. *Husen,* 95 U. S. 465; *Patterson* v. *Kentucky,* 97 U. S. 501; *Willis* v. *Standard Oil Co.,* 50 Minn. 290; *Morgan* v. *Louisiana,* 118 U. S. 455; *Smith* v. *Alabama,* 124 U. S. 465; *Nashville, C. & St. L. Ry. Co.* v. *Alabama,* 128 U. S. 96.

But except as to necessary and reasonable police regulation resting on the rule in *Gibbons* v. *Ogden,* the states have no power to burden interstate commerce. Non-action by congress is equivalent to a declaration that commerce between states shall be free. *Walling* v. *Michigan,* 116 U. S. 446; *Brown* v. *Houston,* 114 U. S. 622; *Welton* v. *Missouri,* 91 U. S. 275; *Hall* v. *De Cuir,* 95 U. S. 485.

This law is not a police regulation valid as such though creating a burden on commerce. The law is a regulation of commerce pure and simple, operating and intended to operate directly on commerce. It is a commercial, not a police regulation. As such it must fall because it throws a burden on and is a regulation of commerce between the states. The police power in its broadest sense is founded on the maxim, "*Sic utere tuo ut alienum non laedas.*" *Thorpe* v. *Rutland, &c., Ry. Co.*, 27 Vt. 140; *Butler* v. *Chambers*, 36 Minn. 69; *Beer Co.* v. *Massachusetts*, 97 U. S. 33; *Slaughter House Cases*, 16 Wall. 36; *Mugler* v. *Kansas*, 123 U. S. 666.

*Illinois Cent. R. Co.* v. *People*, 143 Ill. 434, and *Chicago & A. R. Co.* v. *People*, 105 Ill. 657, are cases sustaining the law. It is supposed by the Illinois court in those cases that such laws have some reference to the despatch of court business, the indictment and prosecution of criminals, the attendance of witnesses and jurors. But a law that all trains must stop cannot be justified on this ground where it is plain the law could not compel the running of the train at all. The law in short compels all trains to stop, whether there is any public convenience or necessity to be served or not. If the Illinois reasoning is correct, no obstacle exists to compelling railroads to carry people free of fare to or from county seats.

As to carrying of the United States mail, it is in the discretion of the postmaster general to determine at what hours the mail shall arrive at and depart from postoffices. Upon this point his decision is absolute and cannot be controlled by the states. *Neil* v. *Ohio*, 3 How. 720. The road in question is a post road and the postal service thereon is committed to the United States by the constitution. U. S. Rev. Stat. § 3964. If the legislature can pass this law it can cripple and impede the United States mail service.

*S. G. L. Roberts, R. C. Saunders, H. W. Childs* and *George B. Edgerton,* for the state.

The police power of the state extends to what is variously termed the "public welfare," "public prosperity," "common good," and "public well being." *Thorpe* v. *Rutland, &c., Ry. Co.*, 27 Vt. 140; *State* v. *New Haven & N. Co.*, 43 Conn. 351; *Munn* v. *Illinois*, 94 U. S. 113; *Davidson* v. *State*, 4 Tex. App. 545; *Railroad Co.* v. *Husen*, 95 U.

.S. 465; *Barbier* v. *Connolly*, 113 U. S. 27; *Stone* v. *Farmers' L. & .T'. Co.*, 116 U. S. 307; *Mugler* v. *Kansas*, 123 U. S. 623; *Powell* v. *Pennsylvania*, 127 U. S. 678; *Lake View* v. *Rose Hill Cem. Co.*, 70 Ill. 191; *Butler* v. *Chambers*, 36 Minn. 69.

This act is one affecting the public welfare. In *Chicago & A. R. Co.* v. *People*, 105 Ill. 657, the court briefly states the character of the business transacted by the public through the county officials at county seats, and it is unnecessary to repeat it here. Public necessities may require trains to stop at county seats and this question is for the legislature. *Pennsylvania Co.* v. *Wentz*, 37 Ohio, 333; *Commonwealth* v. *Eastern R. Co.*, 103 Mass. 254; *State* v. *New Haven & N. Co.*, 43 Conn. 351.

County seats unquestionably require greater train facilities than other towns of the same size and doing the same amount of business. This feature of the case is illustrated by the fact incidentally disclosed by the evidence, "We have stopped there to let the Judge off."

The state has the power to require railroad companies to fence their roads, to slacken the speed of their trains while running through cities, to post their tariffs and time tables at designated places, and to stop their trains at draw bridges and railroad crossings. And why not at county seats?

All will admit that the law has some relation to the public welfare. If so, the legislature had the power to pass it and to determine the necessity for the law. Its judgment is final. The reasonableness of the law is not for judicial investigation, unless it has no real or substantial relation to the public welfare, or is a palpable invasion of rights secured by the fundamental law. *Powell* v. *Pennsylvania*, 127 U. S. 678; *Butler* v. *Chambers*, 36 Minn. 69; *Evison* v. *Chicago, St. P., M. & O. Ry. Co.*, 45 Minn. 370; *Rippe* v. *Becker*, 56 Minn. 100; *Metropolitan Board of Excise* v. *Barrie*, 34 N. Y. 657; *Craig* v. *First Presbyterian Church*, 88 Pa. 42.

It is sometimes difficult to determine when an act tends to regulate interstate commerce in the constitutional sense of the term. The deposit in congress of the power to regulate interstate commerce was not a surrender of the police power of the state. *Rail-*

*road Co.* v. *Hüsen,* 95 U. S. 465. It is not everything that affects commerce that amounts to a regulation of it within the meaning of the constitution. *Munn* v. *Illinois,* 94 U. S. 113; *State Tax on Railway Gross Receipts,* 15 Wall. 293; *Illinois Cent. R. Co.* v. *People,* 143 Ill. 434; *Chicago & A. R. Co.* v. *People,* 105 Ill. 657; *State v. Baltimore & O. R. Co.,* 24 W. Va. 783.

The statute is not an unlawful burden on the carriage of the United States mail. The cases cited upon this point mainly involve the question of the delay and obstruction of the mail by the arrest of the carrier while engaged in transporting it. That question is not involved in this case. We submit a reference to a few additional authorities. *Ohio & M. R. Co.* v. *McClelland,* 25 Ill. 140; *Lakeview* v. *Rose Hill Cem. Co.,* 70 Ill. 191; *Stone* v. *Farmers' L. & T. Co.,* 116 U. S. 307; *Smith* v. *Alabama,* 124 U. S. 465.

CANTY, J. Pine City is a village of 800 inhabitants, the county seat of Pine county, and a station on the St. Paul & Duluth Railroad. The defendant was an engineer on a passenger train on said railroad, and was arrested, tried, convicted, and sentenced in Justice Court for failing to stop his train at Pine City. He appealed to the District Court, and was there again convicted and sentenced, and appeals to this court. The statute under which he was convicted is Laws 1893, ch. 60, which reads as follows:

"All regular passenger trains, run by any common carrier operating a railway in this state, or by any receiver, agent, lessee or trustee of said common carrier, shall stop a sufficient length of time at its stations at all county seats within this state to take on and discharge passengers from such trains with safety, and any engineer, conductor or other agent, servant or employé of, or any person acting for such common carrier or for any receiver, agent, lessee, or trustee of such common carrier, who violates any provision of this act is guilty of a misdemeanor and punishable by a fine of not less than twenty-five dollars nor more than one hundred dollars, or by imprisonment in the county jail for not less than ten days nor more than three months; provided, however, that this act shall not apply to through railroad trains entering this state from any other state, or to transcontinental trains of any railroad."

This train was a fast express, running from St. Paul and Minneapolis to Duluth, stopping only at railroad crossings and junctions, but not at stations on the way. Besides this train, there were two other passenger trains and one accommodation train run each way every day, which stopped at Pine City.

1. It is contended by appellant that this law is so unreasonable and oppressive as against the railroad company that it is unconstitutional and void. We are not of that opinion. While it seems to us that it is rather drastic legislation to compel this train, which is designed only for through traffic, and stops at no other stations *en route,* to stop at this one station, while there are so many other trains to do the local business, still we cannot substitute our judgment for that of the legislature. There are reasons in support of the law on which the legislature had a right to come to the conclusion at which they arrived. Besides, this law does not apply alone to this train, this county seat, and this railroad, but to all railroads, all county seats, and, with a few exceptions, to all trains; and there are not the same reasons for assailing such a general law merely because it works hardship or inconvenience in exceptional cases as if it worked such hardship or inconvenience in all cases to which it applied. It is a regulation of common carriers which the legislature has the power to impose, and it is certainly not so unjust and unreasonable that the courts should declare it void. See *Chicago & A. R. Co.* v. *People,* 105 Ill. 657, and *Illinois Cent. R. Co.* v. *People,* 143 Ill. 434, (33 N. E. 173,) where a similar law is held valid.

2. The evidence showed that, while the train in question ran only to Duluth, one-third of the passengers it carried were carried on through tickets to Superior, Wis., and were transferred at Duluth to another train, which connected with this one, and carried these passengers to Superior. The train being used to some extent in the business of interstate commerce, it is contended for this reason that the legislature had no right to impose this regulation on it. We do not agree with counsel for appellant. While it is not necessary to put it on so narrow a ground, we will say that this is not a regulation of interstate traffic, but most distinctively a regulation of local traffic, for the purposes of which the train was required to be stopped.

3. The evidence showed that the train in question carried the United States mail, and it is contended that for this reason the regulation was void. The point is without merit.

The judgment appealed from should be affirmed. So ordered.

BUCK, J., absent, sick, took no part.

(Opinion published 59 N. W. 487.)