CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* ILLINOIS.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 198. Argued and submitted March 16, 1900. — Decided April 30, 1900.

A state statute required all regular passenger trains to stop a sufficient length of time at county seats to receive and let off passengers with safety. It appearing that the defendant company furnished four regular passenger trains per day each way, which were sufficient to accommodate all the local and through business, and that all such trains stopped at county seats, the act was held to be invalid as applied to an express train intended only for through passengers from St. Louis to New York.

While railways are bound to provide primarily and adequately for the accommodation of those to whom they are directly tributary, they have the legal right, after all these local conditions have been met, to adopt special provisions for through traffic, and legislative interference therewith is an infringement upon the clause of the Constitution which requires that commerce between the States shall be free and unobstructed.

This was a petition for a writ of mandamus filed in the Circuit Court for the county of Montgomery, by the State's attorney for that county, to compel the defendant railway company, which for several years past has operated, and is now operating, a railroad from St. Louis, Missouri, through the county of Montgomery and the city of Hillsboro, the county seat of such county, to Indianapolis, Indiana, to stop a regular passenger train, designated as the "Knickerbocker Special," at the city of Hillsboro, a sufficient length of time to receive and let off passengers with safety.

The petition was based upon section 26, of an act of the General Assembly of Illinois, entitled "An act in relation to fences and operating railroads," approved March 31, 1874, which reads as follows:

"Every railroad corporation shall cause its passenger trains to stop upon its (their) arrival at each station advertised by such corporation as a place of receiving and discharging passengers upon and from such trains, a sufficient length of time to receive and let off such passengers with safety: Provided, all regular passenger trains shall stop a sufficient length of time at the railroad stations of county seats to receive and let off passengers with safety."

The answer of the railroad company averred that the company furnished four regular passenger trains each way a day, passing through and stopping at Hillsboro, and that they amply accommodated the travel, and afforded every reasonable facility to such city; that the Knickerbocker Special was a train especially devoted to carrying interstate transportation between the city of St. Louis and the city of New York; that the travel between these cities had grown to such an extent that it had become necessary to put on a through fast train, which connected with other similar trains on the Lake Shore and New York Central roads, and that it was necessary to put on this train because the trains theretofore run, none of which had ever been taken off, could not, by reason of stopping at Hillsboro and other similar stations, make the time necessary for eastern connections, or carry passengers from St. Louis to New York within the time which the demands of business and inter-

state traffic required; that the Knickerbocker Special is not a regular passenger train for carrying passengers from one point to another in the State of Illinois, such traffic being amply provided for by other trains, and that the Knickerbocker Special is used exclusively for interstate traffic from and to points without the State of Illinois; that it is not subject to regulation by the statute of Illinois providing that all trains shall stop at all county seats, and that to subject it to the statutes of the various States through which it passes, requiring it to stop at county seats, would wholly destroy the usefulness of the train, and would impede and obstruct interstate commerce, and that obedience to the statute in question would require it to abandon the train.

A demurrer to this answer was sustained, and the defendant electing to stand upon it as a full defence to the petition, a final judgment was rendered and a peremptory writ of mandamus awarded against the defendant. On appeal to the Supreme Court of the State this judgment was affirmed. Whereupon the railway company sued out a writ of error from this court.

*Mr. John T. Dye* for plaintiff in error. *Mr. George F. Mc-Nulty* was on his brief.

*Mr. E. C. Akin, Mr. C. A. Hill* and *Mr. B. D. Monroe* for defendant in error, submitted on their brief.

Mr. Justice Brown delivered the opinion of the court.

Few classes of cases have become more common of recent years than those wherein the police power of the State over the vehicles of interstate commerce has been drawn in question. That such power exists and will be enforced, notwithstanding the constitutional authority of Congress to regulate such commerce, is evident from the large number of cases in which we have sustained the validity of local laws designed to secure the safety and comfort of passengers, employés, persons crossing railway tracks, and adjacent property owners, as well as other regulations intended for the public good.

We have recently applied this doctrine to state laws requiring locomotive engineers to be examined and licensed by the state authorities, *Smith* v. *Alabama*, 124 U. S. 465; requiring such engineers to be examined from time to time with respect to their ability to distinguish colors, *Nashville &c. Railway* v. *Alabama*, 128 U. S. 96; requiring telegraph companies to receive dispatches and to transmit and deliver them with due diligence, as applied to messages from outside the State, *Western Union Tel. Co.* v. *James*, 162 U. S. 650; forbidding the running of freight trains on Sunday, *Hennington* v. *Georgia*, 163 U. S. 299; requiring railway companies to fix their rates annually for the transportation of passengers and freight, and also requiring them to post a printed copy of such rates at all their stations, *Railway Company* v. *Fuller*, 17 Wall. 560; forbidding the consolidation of parallel or competing lines of railway, *Louisville & Nashville Railroad* v. *Kentucky*, 161 U. S. 677; regulating the heating of passenger cars, and directing guards and guard posts to be placed on railroad bridges and trestles and the approaches thereto, *N. Y., N. H. &c. Railroad Co.* v. *New York*, 165 U. S. 628; providing that no contract shall exempt any railroad corporation from the liability of a common carrier or a carrier of passengers, which would have existed if no contract had been made, *Chicago, Milwaukee &c. Railway* v. *Solan*, 169 U. S. 133; and declaring that when a common carrier accepts for transportation anything directed to a point of destination beyond the terminus of his own line or route, he shall be deemed thereby to assume an obligation for its safe carriage to such point of destination, unless at the time of such acceptance such carrier be released or exempted from such liability by contract in writing, signed by the owner or his agent, *Richmond & Allegheny Railroad* v. *Patterson Tobacco Co.*, 169 U. S. 311. In none of these cases was it thought that the regulations were unreasonable or operated in any just sense as a restriction upon interstate commerce.

But for the reason that these laws were considered unreasonable and to unnecessarily hamper commerce between the States, we have felt ourselves constrained in a large number of cases to express our disapproval of such as provided for taxing di-

rectly or indirectly the carrying on or the profits of interstate commerce. We have also held to be invalid a statute of Louisiana requiring those engaged in interstate commerce to give all persons upon public conveyances equal rights and privileges in all parts of the conveyance, without distinction or discrimination on account of race or color, *Hall* v. *De Cuir*, 95 U. S. 485; another regulating the charges of railway companies for passengers or freight between places in different States, *Wabash St. Louis &c. Railway* v. *Illinois*, 118 U. S. 557; another requiring telegraph companies to deliver dispatches by messenger to the persons to whom the same are addressed, so far as they attempted to regulate the delivery of such dispatches at places situated in another State, *Western Union Tel. Co.* v. *Pendleton*, 122 U. S. 347; and still another forbidding common carriers from bringing intoxicating liquors into the State without being furnished with a certificate that the consignee was authorized to sell intoxicating liquors in the county, *Bowman* v. *Chicago & Northwestern Railway*, 125 U. S. 465.

Several acts *in pari materia* with the one under consideration have been before this court, and have been approved or disapproved as they have seemed reasonable or unreasonable, or bore more or less heavily upon the power of railways to regulate their trains in the respective and sometimes conflicting interests of local and through traffic. In the earliest of these cases, *Illinois Central Railroad* v. *Illinois*, 163 U. S. 142, the very statute of Illinois under consideration in this case, as construed and applied by the Supreme Court of that State, was held to be an unreasonable restriction upon interstate traffic, in requiring a fast mail train from Chicago to places south of the Ohio River, over an interstate highway established by authority of Congress, to delay the transportation of its interstate passengers and United States mail, by turning aside from its direct route and running to a station (Cairo) three and one-half miles away from a point on that route, and back again to the same point, before proceeding on its way; and to do this for the purpose of discharging and receiving passengers at that station, for whom the railroad company furnished other and ample accommodation. Said Mr. Justice Gray: "The State may doubt-

less compel the railroad company to perform the duty imposed by its charter of carrying passengers and goods between its. termini within the State. But so long, at least, as that duty is adequately performed by the company, the State cannot, under the guise of compelling its performance,. interfere with the performance of paramount duties to which the company has been subjected by the Constitution and laws of the United States."

Upon the contrary, in *Gladson* v. *Minnesota,* 166 U. S. 427, a state statute requiring every railroad to stop all its regular passenger trains running wholly within the State at its stations in all county seats long enough to take on and discharge passengers with safety, was held to be a reasonable exercise of the police power of the State, even as applied to a train connecting with a train of the same company running into another State, and carrying some .interstate passengers as well as the mail. The case was distinguished from that of the *Illinois Central Railroad* v. *Illinois,* in the fact that the train in question ran wholly within the State of Minnesota, and could have stopped at the county seats without deviating from its course; and that the statute of Minnesota expressly provided that the act should not apply to through trains entering the State from any other State, or to transcontinental trains of any railroad. Speaking of police regulations for the government of railroads while operating roads within the jurisdiction of the State, it was said that " they are not in themselves regulations of interstate commerce; and it is only when they operate as such in the circumstances of their application and conflict with the express or presumed will of Congress exerted upon the same subject, that they can be required to give way to the paramount authority of the Constitution of the United States." The railroad in this case was treated as a purely domestic corporation, notwithstanding it connected, as most railroads do, with railroads in other States.

In the most recent case upon this subject, *Lake Shore & Michigan Southern Railway* v. *Ohio,* 173 U. S. 285, a statute of Ohio providing that every railroad company should cause three of its regular trains carrying passengers, if so many are run daily,. Sundays excepted, to stop at a station, city or village contain-

ing over three thousand inhabitants, for a time sufficient to receive and let off passengers, was held to be, in the absence of legislation by Congress upon the subject, consistent with the Constitution of the United States, when applied to trains engaged in interstate commerce through the State of Ohio. In delivering the opinion of the court, Mr. Justice Harlan observed : "The statute does not stand in the way of the railroad company running as many trains as it may choose between Chicago and Buffalo without stopping at intermediate points, or only at very large cities on the route, if in the contingency named in the statute the required number of trains stop at each place containing three thousand inhabitants long enough to receive and let off passengers. It seems from the evidence that the average time required to stop a train and receive and let off passengers is three minutes. Certainly, the State of Ohio did not endow the plaintiff in error with the rights of a corporation for the purpose simply of subserving the convenience of passengers traveling through the State between points outside of its territory. . . . It was for the State to take into consideration all the circumstances affecting passenger travel within its limits, and as far as practicable make such regulations as were just to all who might pass over the road in question. It was entitled, of course, to provide for the convenience of persons desiring to travel from one point to another in the State on domestic trains. But it was not bound to ignore the convenience of those who desired to travel from places in the State to places beyond its limits, or the convenience of those outside of the State who wished to come into it. Its statute is in aid of interstate commerce of that character. It was not compelled to look only to the convenience of those who wished to pass through the State without stopping." This case is readily distinguishable from the one under consideration in the fact that the statute of Ohio required only that three regular passenger trains should stop at every station containing three thousand inhabitants, leaving the company at liberty to run as many through passenger trains exceeding three per day as it chose, without restriction as to stoppage at particular stations. In other words, it left open the loophole which the statute of Illinois has effectually closed.

The question broadly presented in this case is this : Whether a state statute is valid which requires every passenger train, regardless of the number of such trains passing each way daily and of the character of the traffic carried by them, to stop at every county seat through which such trains may pass by day or night, and regardless also of the fact whether another train designated especially for local traffic may stop at the same station within a few minutes before or after the arrival of the train in question ?

The demurrer to the answer admits that the railway company furnishes a sufficient number of regular passenger trains, (four each way a day,) to accommodate all the local and through business along the line of the road, and that all of such trains stop at Hillsboro; that none of such trains have been taken off, and all of which ran prior to the putting on of the Knickerbocker Special still run and still stop at Hillsboro, and that they furnish ample and sufficient accommodation to all persons desiring to travel to and from that place; that the Knickerbocker Special was put on in response to an urgent demand on the part of the through travelling public from St. Louis to New York and that it was necessary, as the passenger trains theretofore used could not, by reason of stopping at way stations, make the time required for eastern connections, and if compelled to stop at county seats the company will be compelled to abandon the train to the great damage of the travelling public and to the railway company.

It is evident that the power attempted to be exercised under this statute would operate as a serious restriction upon the speed of trains engaged in interstate traffic, and might, in some cases, render it impossible for trunk lines running through the State of Illinois to compete with other lines running through States in which no such restrictions were applied. If such passenger trains may be compelled to stop at county seats it is difficult to see why the legislature may not compel them to stop at every station—a requirement which would be practically destructive of through travel, where there were competing lines unhampered by such regulations. While, as we held in the *Lake Shore case*, railways are bound to provide primarily and ade-

quately for the accommodation of those to whom they are directly tributary, and who not only have granted to them their franchise but who may have contributed largely to the construction of the road, they are bound to do no more than this, and may then provide special facilities for the accommodation of through traffic. We are not obliged to shut our eyes to the fact that competition among railways for through passenger traffic has become very spirited, and we think they have a right to demand that they shall not be unnecessarily hampered in their efforts to obtain a share of such traffic. It is evident, however, that neither the greater safety of their tracks, the superior comfort of their coaches or sleeping berths or the excellence of their tables would insure them such share, if they were unable to compete with their rivals in the matter of time. The great efforts of modern engineering have been directed to combining safety with the greatest possible speed in transportation, both by land and water. The public demand this; the railway and steamship companies are anxious in their own interests to furnish it, and local legislation ought not to stand in the way of it.

With no disposition whatever to vary or qualify the cases above cited, neither the conclusions of the court nor the tenor of the opinions are opposed to the principle we hold to in this case, that, after all local conditions have been adequately met, railways have the legal right to adopt special provisions for through traffic, and legislative interference therewith is unreasonable, and an infringement upon that provision of the Constitution which we have held requires that commerce between the States shall be free and unobstructed.

While the statute in question is operative only in the State of Illinois, it is obnoxious to the criticism made of the Louisiana statute in *Hall* v. *DeCuir*, 95 U. S. 485, that "while it purports only to control the carrier when engaged within the State, it must necessarily influence his conduct, to some extent, in the management of his business throughout his entire voyage. . . . . If each State was at liberty to regulate the conduct of carriers while within its jurisdiction, the confusion likely to follow could not but be productive of great inconvenience and unnecessary hardship. Each State could provide for its own

passengers and regulate the transportation of its own freight regardless of the interests of others." The distinction between this statute and regulations requiring passenger trains to stop at railroad crossings and drawbridges, and to reduce the speed of trains when running through crowded thoroughfares; requiring its tracks to be fenced, and a bell and whistle to be attached to each engine, signal lights to be carried at night, and tariff and time tables to be posted at proper places, and other similar requirements contributing to the safety, comfort and convenience of their patrons, is too obvious to require discussion. *Railroad Commission Cases,* 116 U. S. 307, 334.

We are of opinion that the act in question is a direct burden upon interstate commerce, and the judgment of the Supreme Court of the State of Illinois must therefore be reversed, and the case remanded to that court for further proceedings not inconsistent with this opinion.

MR. JUSTICE BREWER and MR. JUSTICE SHIRAS concurring:

We concur in this judgment on the proposition that the act of the legislature of Illinois whether reasonable or unreasonable, wise or foolish, is, as applied to the facts of this case, an attempt by the State to directly regulate interstate commerce, and as such attempt, is beyond the power of the State.