ILLINOIS CENT. R. CO. v. MISSISSIPPI RAILROAD COMMISSION et al.

(Circuit Court of Appeals, Fifth Circuit. April 4, 1905.)

No. 1,395.

1. FEDERAL COURTS — JURISDICTION—UNITED STATES CONSTITUTION—SUITS AGAINST STATE—INTERSTATE COMMERCE.

Const. U. S. Amend. 11, prohibiting the bringing of a suit against a state by a citizen of another state, cannot be construed to nullify the power conferred on Congress to regulate the commerce among the several states, nor prevent an action to restrain a state railroad commission from enforcing an order injuriously affecting interstate commerce.

2. SAME—INJUNCTION.

It having been held by the Supreme Court of Mississippi that the Mississippi Railroad Commission was merely an administrative agency exercising quasi judicial powers, and that its findings were only prima facie evidence that its decision was proper, such commission was not a court within Rev. St. U. S. § 720 [U. S. Comp. St. 1901, p. 581], providing that an injunction shall not be granted by any federal court to stay proceedings in any court of a state.

3. SAME—INTERSTATE TRAINS—STATE REGULATIONS—ORDERS TO STOP.

Where complainant railroad company supplied a county seat with three south-bound trains per day, and the only objection thereto was that the equipment and time thereof was unsatisfactory, the State Railroad Commission had no power to order complainant to cause two of its fast south-bound trains, operated mainly for the transportation of interstate

through business on a fast schedule in order to comply with the United States mail contract and to make close connections at destination with other roads, to stop at such station under Code Miss. 1892, §§ 3550, 4302, empowering such commission to require all passenger trains to stop for passengers at all county seats, etc.

Appeal from the Circuit Court of the United States for the Southern District of Mississippi.

In April, 1903, 68 citizens of the town of Magnolia, the county seat of Pike county, Miss., presented a petition to the Mississippi Railroad Commission, as follows:

"We, the undersigned citizens of the town of Magnolia, respectfully petition your honorable body to issue an order making Magnolia a regular stop for passenger trains one, three, and four. Magnolia being one of the most progressive towns in the state, and the county site of this county, we believe that we are entitled to have these trains to make regular stops here. We believe it will be for the best interest of the public, as well as for our town, that your honorable body issue an order requiring the above passenger trains one, three, and four to make regular stops here."

By order of the commission, notice was given O. M. Dunn, assistant general superintendent of the Illinois Central Railroad Company. The petition coming on to be heard April 21, 1903, the commission ordered that "the prayer of petitioners be granted in part, as follows, to wit, that trains 1 and 3 be required to stop on flag, to be effective on and after the 1st day of May, 1903; and, in so far as the petition refers to No. 4, it is denied." The Railroad Commission acted under authority conferred on it by sections 3550 and 4302 of the Code of Mississippi (1892):

"3550. To Stop All Passenger Trains, if, etc., at County Seats.—Every railroad shall cause each and all of its passenger-trains to stop for passengers at all county seats at which it has a depot, at the discretion of the railroad commission."

"4302. Necessary Depots to be Maintained.—Every railroad shall establish and maintain such depots as shall be reasonably necessary for the public convenience, and shall stop such of the passenger and freight trains at any depot as the business and public convenience shall require; and the commission may cause all passenger-trains to permit passengers to get on and off in a city at any place other than at the depot, where it is for the convenience of the traveling public. And it shall be unlawful for any railroad to abolish or disuse any depot when once established, or to fail to keep up the same and to regularly stop the trains thereat, without the consent of the commission."

On May 6, 1903, the appellant, complainant below, filed its bill against the appellees, defendants below, seeking to enjoin the enforcement of the foregoing order of the Railroad Commission. The bill shows that: "The complainant is a corporation of the state of Illinois, and the defendants, the president and members of the Mississippi Railroad Commission, are citizens of the state of Mississippi. That complainant is operating an interstate line of railroad extending from the city of New Orleans, in the state of Louisiana, on the south, north through the said state of Louisiana and the state of Mississippi and the states of Kentucky and Tennessee and Indiana and Illinois, to the Great Lakes of the Northwest, connecting at various points with other interstate lines of railroads. That the line of railroad operated by it has been established by the Congress of the United States, and is now a national highway for the accommodation of interstate commerce and the mails of the United States, and has been recognized and promoted as such, as will appear by reference to an act of Congress of September 20, 1850, c. 61 (9 Stat. 466), granting a right of way and sections of land to the state of Illinois to aid in the construction of a railroad from the southern terminus of the Illinois and Michigan Canal to a point at or near the junction of the Mississippi and Ohio rivers, with branches to Chicago and Dubuque, to be and remain a public highway for the use of the government of the United States, free from all toll or other charges upon transportation of any property or troops of the United States, and on which mails of the United States

will at all times be transported; and in order to aid in the construction of said railroad made like grants to the states of Alabama and Mississippi, respectively, for the purpose of aiding in the construction of a railroad from the city of Mobile to a point at or near the mouth of the Ohio river; also by reference to an act of February 10th, 1850, of the state of Illinois, chartering the complainant under the name of the Illinois Central Railroad Company, and ceding to it the rights and lands granted to the state by the said act of Congress for the purpose of constructing and maintaining within the state such trunk lines and branches, describing the southern terminus as a point at the city of Cairo; and by reference to an act of Congress of June 15, 1866 (14 Stat. 66), entitled 'An act to facilitate commercial, postal, and military communication among the several states'; and also by reference to the acts of Congress of December 17, 1872 (17 Stat. 398, c. 4), and of February 14, 1883 (22 Stat. 414, c. 44). That heretofore the complainant leased from the Chicago, St. Louis & New Orleans Railroad Company a line of railroad extending from the south bank of the Ohio river opposite Cairo southward through the states of Kentucky, Tennessee, Mississippi, and Louisiana to the city of New Orleans, which said railroad had been previously formed by consolidations authorized by act of the Legislature of the several states mentioned, thus forming the line of interstate railroad heretofore mentioned. That, owing to the exigencies of its interstate business and the requirements of modern commerce and passenger transportation, as well as the freight and the United States mail, it has been from time to time required to shorten its schedules, and to maintain and operate certain fast through trains intended primarily and chiefly for the interstate transportation and interstate commerce. That two of its said trains doing its interstate business are two south-bound trains, one designated as train 'No. 1,' and one as train 'No. 3'; No. 1 being commonly known as the 'Fast Mail,' and No. 3 as the 'New Orleans and Chicago Limited.' That these two trains are run expressly for the purpose, as aforesaid, of carrying on an interstate business and for the transportation of the United States mail. That these two trains are run under special schedules for the purpose and of necessity to make close connections with other through trunk lines or railroad doing an interstate business connecting with complainant's line of railroad at New Orleans, in the state of Louisiana, and at Chicago, in the state of Illinois, and at various intermediate points. That in order to maintain the necessary schedules for the operation of these interstate trains it is impossible and wholly impracticable to stop at all stations, and, further, that these said trains, being south-bound trains, only stop regularly at junction points and all such points of importance in the state of Mississippi which are necessary and which justify said stops. That these trains each carry, in addition to interstate passengers and freights in the shape of express matter, the United States mail under a contract with the government of the United States, and that by virtue of this contract for carrying the United States mail complainant is compelled to maintain certain schedules in order to make certain and close connections with other important interstate lines, principally transcontinental lines and lines of railroad extending out of the United States. That in addition to the said fast through trains, it maintains certain other trains, which afford ample and all necessary and reasonable accommodations for all stations along its line. That the town of Magnolia is a town situated on the complainant's line in the state of Mississippi 98 miles north of the city of New Orleans, and is a place of about twelve hundred inhabitants, as shown by the recent census of the United States. That the following passenger trains south bound daily leave the town of Magnolia for the city of New Orleans, to wit: South: No. 5 leaves Magnolia 5:15 a. m., arrives N. O. 7:50 a. m.; No. 31 leaves Magnolia 6:00 a. m., arrives N. O. 9:35 a. m.; No. 23 leaves Magnolia 6:56 p. m., arrives N. O. 10:20 p. m. That No. 1 passes Magnolia 8:45 a. m., arrives N. O. 11:25 a. m.; No. 3 passes Magnolia 5:20 p. m., arrives N. O. 7:55 p. m. That compliance with said order will delay said trains Nos. 1 and 3, and imperil the ability of the complainants to comply with its contract with the United States mails, and embarrass its interstate traffic. That the said trains Nos. 1 and 3 make close connections with other lines of railroads at the city of New Orleans, and that the sched-

ules which are adopted for that purpose, and which are now maintained, are about as fast as can now be maintained under the present condition of complainant's roadbed and equipment. That under the contracts with the United States government for the carrying of mail it is subject to a penalty for failure to make connections with other lines of railroad to which the mails are to be delivered for further transportation. That on the 21st day of April, 1903, the Mississippi Railroad Commission promulgated an order requiring trains Nos. 1 and 3 to stop on flags at the said town of Magnolia. That in the issuance of this order the said Railroad Commission of the State of Mississippi were acting upon a supposed authority conferred upon it by certain statutes of the state of Mississippi giving to said Mississippi Railroad Commission the power, at its discretion, to cause all trains to stop at all county seats—Magnolia being the county seat. That your complainant protested against the issuing of the said order, and showed to the Railroad Commission that it furnished to the town of Magnolia all reasonable and necessary railroad facilities, and that the effect of this order would be to give to the town of Magnolia greater railroad facilities than are afforded by complainant to any other town in the state of Mississippi, including the city of Jackson, the capitol of the state, excepting only the town of McComb City, which, being a relay station on complainant's road, it is necessary for all trains to stop there to change the engine, and for fuel, water, etc. That the effect of said order would be to give to the town of Magnolia five daily trains to the city of New Orleans running within short intervals of each other. That by the statutory law of the state of Mississippi it is subject to the penalty of $50 for each and every time it fails to stop its said trains in obedience to the said order of the Railroad Commission above set forth. And that the said complainant would be compelled to comply with said order, or to be subject to a multitude of suits for penalties arising from each and every violation of said order, and the said defendants threaten by suit to enforce the observance of said order. That the order of the Railroad Commission of the State of Mississippi is a direct burden upon interstate commerce, and therefore a violation of and conflict with section 8 of article 1 of the Constitution of the United States, which provides that Congress shall have power to regulate commerce with foreign nations and among the several states; and, further, that said order is a direct and unnecessary interference with the speedy carriage of the mails of the United States." The bill concludes with a prayer for a temporary restraining order, a decree vacating the commission's order, for a permanent injunction, and for general relief.

On the hearing the court granted a temporary injunction as prayed for. The defendants answered the bill, denying that Magnolia has adequate accommodations for travel south, that the order is unreasonable, that it would embarrass complainant's interstate business or its mail contracts, that the order is a direct burden on interstate commerce or an unnecessary interference with the carriage of the mails. The answer also alleges that the Railroad Commission is a legally constitued tribunal, with full supervising jurisdiction of railroads; and that the order of the commission was legally made, and is valid and enforceable. And it is further alleged that this suit is one against the state, contrary to the eleventh amendment; that the Circuit Court has no jurisdiction to restrain orders of the commission; and that the injunction should be disallowed on the pleadings and proofs.

The complainant offered the evidence of two witnesses, by whom was proved the allegations of the bill as to the trains Nos. 1 and 3; that both trains were made up in Chicago, and run to New Orleans for the main purpose of carrying through passengers and the United States mail; that these trains made close connection with other lines of railway along the route, and with the Southern Pacific and other roads at New Orleans; that both were fast mail trains—as fast as they could be safely made; that it was necessary that they should be run as fast as possible to comply with contracts with the government to carry the mail, and to compete with other lines as carriers of passengers; that these trains stopped only at junction points and important places where there was considerable travel, and at least every 50 miles to get water for the engines. One witness said: "If we stopped our through trains at all stations between Jackson, Miss., and New Orleans,

of the size of Magnolia, we would make local trains of them. We would not only lose passenger business, but we would lose the mail contracts, and hurt the towns and country, too. If there were no through service, the people would go to the other lines, to our competitors, and avoid the road." It was shown that Magnolia was served by three passenger trains going south daily that left there and arrived in New Orleans at the times stated in the bill. The defendants examined three witnesses, by whom it was proved that trains 1 and 3 do not stop at Magnolia; that the accommodations on the three passenger trains that stop there daily were not good; that these trains were crowded by local travel, "workmen, dagos," and others; that the trains were not fast; that they stopped at all, or nearly all, stations; that they did not leave Magnolia at times convenient to the citizens, nor did they arrive at New Orleans at times as convenient at Nos. 1 and 3. The three witnesses testified to many circumstances showing the difficulty of getting tickets for through travel and getting baggage checked at Magnolia; that Magnolia has about 1,200 inhabitants, and "ships between 11,000 and 14,000 bales of cotton" and 5,000 to 6,000 tons of seed, and is a thriving and prosperous town, where there is much travel. It does not appear from the evidence that the trains that stop there going south are not sufficient for the travel, but the objection or complaint shown by the proof is that the trains are not well equipped, and that they leave at inconvenient times. For example, one witness said, "If a fellow is accustomed to getting up at seven, he didn't like to get up at five." Another said, when asked to give his reasons for wanting Nos. 1 and 3 to be required to stop: "In the winter season, especially, I am very busy, and always like to make as much time as possible. I do it on account of business and for the comfort there is in the travel. They are better trains than any other, and I think my business would be facilitated, and I think it would be to the general interest of the town to have them stop." There was no important conflict in the evidence on material points.

The court held the plaintiff not entitled to relief, dissolved the preliminary injunction, and dismissed the bill. The complainant brings the case here by appeal, and assigned that the court erred in dismissing the bill.

Edward Mayes (J. M. Dickinson, on the brief), for appellant.

Marcellus Green (William Williams, Atty. Gen., J. N. Flowers, Asst. Atty. Gen., and Garner Wynn Green, on the brief), for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

We are met at the threshold of the case with the proposition that this suit is forbidden by the eleventh amendment; that it is, in effect, a suit against a state by a citizen of another state. The Constitution, with its amendments, is construed as one instrument, and the eleventh amendment cannot be applied to nullify the power conferred on Congress to regulate commerce among the several states. It is not a barrier to judicial investigation to ascertain whether other provisions of the Constitution have been disregarded by state action. Prout v. Starr, 188 U. S. 537, 23 Sup. Ct. 398, 47 L. Ed. 584; Reagan v. Farmers' L. & T. Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Fargo v. Hart, 193 U. S. 490, 24 Sup. Ct. 498, 48 L. Ed. 761.

It is also alleged in the answer that this court has no jurisdiction to enjoin the defendants, because of section 720 of the Revised Statutes [U. S. Comp. St. 1901, p. 581], which provides that "the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state." The Railroad Com-

mission is not a court within the meaning of section 720. It has been held by the Supreme Court of Mississippi that the Railroad Commission of that state is only an administrative agency, which exercises quasi judicial powers, and its findings are only "prima facie evidence that such decision was right and proper." W. U. T. Co. v. Miss. R. R. Commission, 74 Miss. 80, 92, 21 South. 15.

The main question in the case relates to the validity of the order made by the Railroad Commission requiring the fast mail trains from Chicago to New Orleans to stop at Magnolia. In Cleveland, etc., Ry. v. Illinois, 177 U. S. 514, 20 Sup. Ct. 722, 44 L. Ed. 868, the Supreme Court has collated and briefly commented on the cases showing the police power of the state over the vehicles of interstate commerce. The cases are quoted where state action is held valid which restricts and regulates common carriers, because "in none of these cases was it thought that the regulations were unreasonable, or operated in any just sense as a restriction upon interstate commerce." And another series of cases is quoted, in which the Supreme Court felt itself constrained to hold state statutes invalid as in conflict with the authority conferred on Congress to regulate commerce among the several states. These decisions show that, while the court fully recognizes the police power of the state as applicable to railroads, no unnecessary interference by state action with commerce among the states is permitted, and the paramount power of Congress is always kept in mind. The point decided in that case (Cleveland, etc., Ry. v. Illinois, supra) is that a state statute which required all regular passenger trains to stop at county seats was invalid as applied to an express train intended only for through passengers from St. Louis to New York, it appearing that the defendant company furnished four regular passenger trains daily that stopped at all county seats, and that they were sufficient to accommodate the travel. This case would unquestionably be controlling in the case at bar if the three passenger trains which stop at Magnolia going south are found to be sufficient on the evidence. As the Railroad Commission and the Circuit Court have made orders which indicate that they are not sufficient, and that the town of Magnolia should have five daily trains going south, we think it well to examine other questions.

The two sections of the Mississippi Code which we have quoted in the statement confer power on the Railroad Commission to (1) require all passenger trains to stop for passengers at all county seats; (2) to stop such of the passenger and freight trains at any depot as the business and public convenience shall require; (3) to stop trains for passengers to get on and off in a city at any place other than the depot, where it is for the convenience of the traveling public. In Cleveland, etc., Ry. Co. v. Illinois, supra, the state statute in question only required the trains to stop at "county seats," and Mr. Justice Brown observed:

"If such passenger trains may be compelled to stop at county seats, it is difficult to see why the Legislature may not compel them to stop at every station—a requirement which would be practically destructive of through travel where there were competing lines unhampered by such regulations."

It is clear that the Mississippi statutes may be so applied as to present the case suggested by this observation. If these statutes are valid when applied to trains made up and scheduled for rapid interstate travel, then a state Legislature has the power to prohibit such travel altogether. The exercise of the full power conferred by these statutes would paralyze the interstate road for the purposes of rapid travel from one end to the other, for it would be of no use to go fast in one state if delayed in another.

The Supreme Court, in the case just cited, repeats what it had theretofore held, that railways are bound primarily and adequately to provide for the accommodation of those to whom they are directly tributary, and who have granted to them their franchise, and contributed to their construction. The state unquestionably has ample power to require the complainant company to furnish adequate facilities and accommodations to the town of Magnolia. The citizens of Magnolia have not asked for such relief as could be granted them without interfering with the rights of others. They ask only to have trains Nos. 1 and 3 to stop. These trains were designed and scheduled for through travel, and to comply with government contracts to carry the mails from Chicago to New Orleans. If the statutes may be applied to stop through trains at Magnolia, they may be stopped at all stations in Mississippi. To require these trains to stop at all at Magnolia seems unnecessary and unreasonable. If the accommodations afforded are not adequate, why single out the through mail trains, and seek to convert them into local trains? Why not, under existing statutes, or statutes to be enacted, exert the police power of the state to improve the service by having better equipments on the three passenger trains now in use from Magnolia, and, if they are insufficient, by requiring other trains? The citizens of Magnolia are entitled to sufficient accommodations, and the state has the power to enforce the right; but when such right can be enforced otherwise it is unreasonable to do so by interfering with the rights of others equally entitled to the protection of the law.

We are of opinion that the order of the Railroad Commission is invalid, and that the complainant is entitled to relief. The decree of the Circuit Court is reversed, and the case remanded, with instructions to enter a decree for the complainant.