## GULF, C. & S. F. RY. CO. v. STATE. †
(No. 5300.)

(Court of Civil Appeals of Texas. Austin. June 3, 1914. Additional Findings of Fact and Rehearing Denied July 1, 1914.)

1. RAILROADS (§ 227*)—ADEQUACY OF TRAIN SERVICE—ORDERS OF RAILROAD COMMISSION.

Where a railroad company stopped only two trains a day at a county seat town of 1,500 inhabitants, which practice caused many travelers desiring to leave or reach the town to make connections at other points, and the trains stopped did not carry Pullman accommodations, the railroad company did not furnish adequate service, and an order requiring it to stop through trains carrying Pullman cars was not unreasonable.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 741; Dec. Dig. § 227.*]

2. RAILROADS (§ 227*)—REGULATIONS AS TO TRAIN SERVICE—DUTY TO STOP TRAINS.

Nor is such order invalid because the railroad company might be required to stop such trains at other stations; the law only requiring through trains to be stopped at county seats, unless a failure to stop at other points would amount to a clear abuse of the carrier's duties to the public.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 741; Dec. Dig. § 227.*]

3. COMMERCE (§ 58*)—INTERSTATE COMMERCE —INTERFERENCE WITH. .

A state regulation which required a railroad company to stop through trains engaged in interstate commerce at a particular point was not invalid as an interference with interstate commerce where the railroad company, as a public carrier, owed the inhabitants of that locality the duty of stopping its trains there.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 77–86, 100; Dec. Dig. § 58.*]

4. COMMERCE (§ 58*)—REGULATION OF RAILROADS — RAILROAD COMMISSION — AUTHORITY OF.

Under Rev. St. 1911, art. 6676, subd. 2, providing that it shall be the duty of the Railroad Commission to see that every railroad shall run at least one train a day upon which passengers can be carried, and to regulate passenger train service by requiring trains to stop at designated stations, provided that four trains each day carrying passengers for hire, if so many are run, shall be required to stop at all county seat stations, the Railroad Commission has jurisdiction to order a railroad company to stop through trains engaged in interstate commerce at a county seat station, where the stopping of such trains is necessary to furnish the inhabitants of that locality with adequate train service.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 77–86, 100; Dec. Dig. § 58.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

169 S.W.—25  † Application for writ of error pending in Supreme Court.

**5. RAILROADS (§ 254*)—OFFENSES—CONTINUING OFFENSE.**

Where a railroad company, for a considerable time, violated an order of the Railroad Commission requiring it to stop certain trains at a designated station, the railroad company was guilty of as many offenses as there were separate violations of the order.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 764–772; Dec. Dig. § 254.*]

**6. RAILROADS (§ 254*) — PROSECUTION — PUNISHMENT.**

Under Rev. St. 1911, art. 6672, providing that, if any railroad company shall refuse to obey any order of the Railroad Commission, it shall pay to the state a penalty of not more than $5,000 for each violation, the imposition of a fine of $22,400 upon a railroad company, which 224 times violated an order requiring it to stop certain through trains at a designated station, was not excessive.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 764–772; Dec. Dig. § 254.*]

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Suit by the State against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Terry, Cavin & Mills and A. H. Culwell, all of Galveston, for appellant. B. F. Looney, Atty. Gen., and Luther Nichols, Asst. Atty. Gen., for the State.

RICE, J. This suit was brought in behalf of the state by the Attorney General against appellant to recover penalties for the violation of an order of the Railroad Commission of Texas, requiring appellant to stop its trains Nos. 17 and 18 at Meridian, the county seat of Bosque county, a station on its line, a sufficient length of time for passengers to safely get on and off the cars at said place; and, to compel observance of said order, it prayed for a writ of mandámus or mandatory injunction.

Appellant, after general demurrer, special exceptions, and general denial, defended on the ground: (1) That said trains were through trains, engaged in interstate commerce and carrying United States mails, and that, having furnished adequate facilities for the business at Meridian outside of trains 17 and 18, such attempt on the part of the Commission to regulate its service at said point was an unlawful and direct interference with interstate commerce, and hence was void. (2) That the Railroad Commission of Texas was without authority to make said order. (3) That the judgment of the court in assessing a penalty was excessive, contending that the act was continuous, and that only one penalty could be assessed against it. A trial before the court resulted in a judgment in favor of appellee, assessing penalties for 224 violations of said order at $100 each, aggregating $22,400, and granting mandatory writ of injunction, as prayed for, from which judgment this appeal is taken.

Meridian is the county seat of Bosque county, duly incorporated, with a population of 1,500 inhabitants, situated on the line of appellant's railway, which extends through the state from Galveston to Red River and on to Purcell, in Oklahoma. On March 11, 1912, an order was made by the Railroad Commission of Texas, after due notice and hearing, requiring that on and after the 2d of April, 1912, said company should regularly stop trains Nos. 17 and 18 at Meridian for a time sufficient to receive and discharge passengers with safety. Said order remained in force continually from said date up to the time of the trial of this case, during which time appellant had operated said trains continuously, with certain exceptions, without stopping thereat, and it now seeks to justify its refusal so to do by urging that said trains were put on chiefly for the purpose of transporting interstate passengers and to compete with other lines of railway for similar business; that it furnished adequate facilities at said point for the accommodation of the traveling public outside of trains 17 and 18; and that such order was violative of the Interstate Commerce Act, and was therefore void.

[1, 2] It was shown that said trains ran from Galveston through to Purcell, Okl., under one management, and thence were transported by the Atchison, Topeka & Santa Fé Railway Company, another corporation, to Kansas City, Chicago, and other points in the Northwest. If it be conceded that appellant furnished adequate facilities for the accommodation of the traveling public at Meridian, outside of trains 17 and 18, and the order in fact materially and directly interfered with such interstate commerce, then it seems that said order, requiring the stoppage of such trains there, was void. But this contention relative to the adequacy of such service is vigorously assailed by the state, and the court's findings in this respect sustain appellee's insistence. It is true that there were two other trains beside those in question, passing Meridian each way daily; yet it appears from the evidence that passengers not infrequently came in on trains 17 and 18, destined for Meridian, who were not permitted to disembark, and were carried on to Morgan and Clifton, the next stations north and south of said town, and were compelled, at extra expense, to return to Meridian by private conveyance. In addition to this fact, none of these trains, except 17 and 18, carried a Pullman furnishing sleeping car accommodations, by reason of which it appeared that citizens of Meridian and vicinity, who desired to do so, were frequently prevented from traveling thereon, because they failed to stop thereat; and, in order for such persons to be accommodated, they were required to go either to Clifton, Cleburne, Temple, or Morgan, other stations on its line, in order to take passage thereon.

The traveling public along the lines of rail-

way in this state, we think, are entitled to the accommodations furnished by a common carrier, upon compliance with the rules relating to such use. Of course, if the cars of such company fail to stop and receive and discharge passengers at such point, the citizens are thereby deprived of this right. It is no answer to this to say that the companies are not required to furnish sleeping car accommodations. This may be conceded; yet, when they do furnish such accommodations to a part of the public, then we think they are required to furnish the same to all others, otherwise the facilities at such point could not be regarded as adequate. In passing on the adequacy of such facilities, we must look to the convenience and comfort of the passengers, as well as other features of such service. We think the court was justified in finding that adequate facilities were not afforded by appellant to the citizens of Meridian, when it failed to stop the only two trains furnishing sleeping car accommodations in and out of said town. It is futile to argue that, if it be required to stop at Meridian, it may also be required to stop at all other intermediate stations. The law only requires such trains to be stopped at county seats for such purpose; and, unless it was shown that the failure to stop at other points along its line would be a clear abuse of its duties to the public, there would possibly be no authority on the part of the Commission to interfere with its failure to do so.

Appellant cites, in support of its contention, the cases of Herndon v. C., R. I. & P. Ry. Co., 218 U. S. 135, 30 Sup. Ct. 633, 54 L. Ed. 970; Atlantic Coast Line v. Wharton, 207 U. S. 325, 28 Sup. Ct. 121, 52 L. Ed. 230; Illinois Central R. R. v. Illinois, 163 U. S. 142, 16 Sup. Ct. 1096, 41 L. Ed. 107; C., C. & St. L. Ry. Co. v. Illinois, 177 U. S. 514, 20 Sup. Ct. 722, 44 L. Ed. 868; Mississippi R. R. Commission v. Illinois Central, 203 U. S. 335, 27 Sup. Ct. 90, 51 L. Ed. 209. A review, however, of these cases, we think, will show that they are predicated upon facts dissimilar to those in the instant case in several respects, for which reason they are not regarded by us as of controlling effect. Besides carrying United States mail under contract, the companies involved in those cases were each wholly engaged in interstate traffic and the transportation of interstate passengers, whereas, in the instant case, appellant carried both intrastate and interstate passengers, and is shown to have stopped in most of the county seats in Texas along its line, as well as other stations, and was scheduled to stop at every station between Red River and Purcell, in Oklahoma. Nor was it made to appear in the instant case that a compliance with said order would interfere with such interstate travel, but, on the contrary, the court found that to comply with such order would be an aid thereto.

In the Herndon Case supra, which was an action to require the railway company to comply with the provisions of an act of the state Legislature requiring all railroad companies operating within that state to establish depots and stations at junction of other railways and stop a reasonable time for putting off and taking on passengers thereat, it appeared that no necessity existed requiring such stoppage, because ample local accommodations were afforded by several other trains, and that to stop the trains in question would seriously interfere with travel, and connections could not be made as per schedule. The same was also true in the case of C., C. & St. L. Ry. v. Illinois, supra.

In the Wharton Case, supra, ample local facilities outside of the train in question were afforded, two of which carried Pullman sleeping cars, as well as mail, express, and baggage cars. The only objection urged in that case was the want of sufficient speed.

In Illinois Central v. Illinois, supra, to comply with the requirements, it would have been necessary for the train in question to have deviated seven miles from a direct course in order to stop at the particular county seat. In the instant case, the depot of appellant was within the corporate limits of Meridian; and a stop of from three to five minutes, it is shown, would have been sufficient for all purposes.

In Mississippi R. R. Com. v. Illinois Central, supra, among other things, it is said:

"Upon the principles decided in these cases, a state Railroad Commission has the right, under a state statute, so far as railroads are concerned, to compel a company to stop its trains under the circumstances already referred to, and it may order the stoppage of such trains if the company does not otherwise furnish proper and adequate accommodation to a particular locality, and in such cases the order may embrace a through, interstate train actually running and compel it to stop at a locality named."

Also in effect holding that what is adequate accommodation is a question of law to be determined by the facts in each particular case, and all the phases of the service may be looked to and considered in connection with what is meant by "adequate facilities."

[3] In a note to the case of Peterson v. State, 14 L. R. A. (N. S.) 293, is found a collection and partial review of the cases on this subject from which we take the following extract:

"It was held in Gladson v. Minnesota, 166 U. S. 427 [17 Sup. Ct. 627, 41 L. Ed. 1064], affirming 57 Minn. 385, 59 N. W. 487, 24 L. R. A. 502, that a statute requiring all regular passenger trains to stop at all county seats within the state was valid; and that a train carrying the United States mails would not be exempt therefrom. The court distinguished this case from that of Illinois Central v. Illinois, supra," where it was "necessary for the trains to deviate seven miles from a direct course in order to stop at a particular county seat, while in the case at bar the trains ran directly through the county seat. In Lake Shore & M. S. R. Co. v. Ohio, 173 U. S. 285 [19 Sup. Ct. 465] 43 L. Ed. 702, affirming 8 Ohio Cir. Ct. R. 220, a statute was held valid which required each railroad company operating within the state to cause three, each way, of its regu-

lar trains carrying passengers, if so many were run daily, to stop long enough at a station, city, or village containing over 3,000 inhabitants to receive and let off passengers, as such statute was for the public convenience, and did not constitute a regulation of interstate commerce which would be unconstitutional when applied to trains of a corporation of the state engaged in such commerce. A statute or ordinance regulating the speed of trains within the settled portions of municipalities is not an unconstitutional regulation of interstate commerce (Erb v. Morasch, 177 U. S. 584 [20 Sup. Ct. 819], 44 L. Ed. 697, and other cases); and such ordinance will not constitute an unlawful interference with the operation of mail trains running exclusively within the confines of a state (Whitson v. Franklin, 34 Ind. 392)."

The note further says that:

"Much more drastic applications of the police power than this have been sustained"— citing Knobloch v. Chicago, M. & St. Paul R. R. Co., 31 Minn. 402, 18 N. W. 106, and many other cases.

In discussing this subject, Mr. Cook in his work on the Commerce Clause of the Federal Constitution, at page 225, § 101, says:

"It is obvious that the complete exercise of what we have seen to be the power of a state to establish, not only regulations 'pertaining to the health, morals, or safety of the public,' but even such as are 'designed merely to promote the public convenience' and general welfare, must involve power to regulate the conduct of those engaged in transportation within the scope of the commerce clause. A provision for such regulation is, perhaps, especially sustainable, if of general application, and not having a special application to those engaged in such transportation. Under this head excellent illustrations are furnished by provisions regulating the speed of railroad trains or other means of transportation, and otherwise the proper scope of such provisions is very broad and not capable of precise definition. A rather extreme instance seems the prohibition of transportation on the Sabbath, by way of giving effect to the policy of the state to prohibit labor on that day."

The same author (section 104, p. 234) holds that there is no inherent objection to a requirement under the authority of the state that a train employed in transportation within the scope of such commerce clause shall stop at certain times and places, remarking that to what extent such a requirement is sustainable seems difficult to determine, though it seems vaguely assumed that it must be "a reasonable provision for the public convenience," and is not justified if "all local conditions have been adequately met."

Believing as we do, under the findings of the court and the facts of this case as disclosed by the record, that the local service at Meridian, outside of trains Nos. 17 and 18, was inadequate for the accommodation of the public at said station, we hold that the order of the Commission was not violative of the interstate commerce clause of the federal Constitution, as contended by appellant, and overrule its first seven assignments, predicated thereon.

[4] Again it is urged on the part of appellant that the Railroad Commission was without authority to enter said order. Concerning this insistence, we think it sufficient to call attention to our statute upon this subject (subdivision 2 of article 6676, R. S. 1911) which provides that:

"It shall be the duty of the commissioners to see that, upon every railroad and branch of same carrying passengers for hire in this state, shall be run at least one train a day, Sundays excepted, upon which passengers shall be hauled; and the Commission shall have no power to relax this provision, and shall further regulate passenger train service by requiring all passenger trains carrying passengers for hire to stop for a time sufficient to receive and let off passengers at such stations as may be designated by the commissioners: Provided, that four trains each way, carrying passengers for hire, if so many are run daily, Sundays excepted, be required to stop as aforesaid at all county seat stations."

This statute gives to the Railroad Commission the power to regulate passenger train service as above outlined, and clothed the Commission, we think, with power in the present case to enter the order complained of. The statute further gives to the Railroad Commission the power to enforce the laws and make all reasonable regulations for the operation of railway trains. Article 6675, R. S.

[5, 6] We do not believe that there is any merit in appellant's contention to the effect that the punishment was excessive, or that only one offense was committed by the company. The evidence showed, and the court found, that there were 224 violations of this order embraced within the time complained of by the prosecution. Article 6672 of the Revised Statutes, among other things, provides that, if any railway company doing business in this state shall fail, neglect, or refuse to obey any lawful requirement, order, judgment, or decree made by the Railroad Commission of Texas, for every such act of violation it shall pay to the state of Texas a penalty of not more than $5,000.

Every failure on the part of appellant to stop its trains 17 and 18 at Meridian in obedience to said order, constituted, we believe, a complete, separate, and distinct violation of law, for which it was subject to the penalty imposed by the statute. In the nature of things it was not and could not be a continuous offense; hence we think the court did not err in adjudging a penalty for every failure on the part of the company to comply with said order, and overrule the assignments relating to this matter.

The remaining assignments have been duly considered, and are regarded without merit.

Finding no error in the proceedings of the trial court, its judgment is in all things affirmed.

Affirmed.

### Additional Findings of Fact.

In response to appellant's motion for additional findings of fact, we state that, at the time of the trial, it appeared that four trains per day were operated each way by appellant through Meridian, three of which were scheduled to stop thereat, but that

trains Nos. 17 and 18 were not among those so scheduled, and they did not in fact at any time stop in obedience to the order of the Railroad Commission.